MARSHALL FIELD

*v.*

LEVI Z. LEITER.

*Filed at Ottawa June 12, 1886.*

1.  TENANTS IN COMMON—*partition—equalizing shares by payment of money, as owelty.*  It is competent for a court of equity, on bill for partition of real estate, to decree the payment of a sum as owelty, to equalize the shares among the parties.

2.  SAME—*improvements upon the common property—power of court—rights of the respective owners.*  One tenant in common may rightfully insist that the other shall contribute his proportionate share for the preservation of the joint property, but he can not insist that he shall enter upon new investments, to be paid for from the joint property or out of other funds belonging to him, against his judgment and inclination.

3.  And a court of equity, on bill for partition of real property, has not the power to cause improvements and alterations to be made upon the same, preliminary to a partition, through its master in chancery, against the protest of one of the owners of the property, and require the parties in interest to pay the expense thereby occasioned.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Levi Z. Leiter filed his bill in chancery, in the circuit court of Cook county, on January 16, A. D. 1883, against Marshall Field, wherein, after subsequent amendments thereto, it is in substance alleged that complainant and defendant are owners in fee simple of the following property in the city of Chicago, State of Illinois, viz: Commencing at the south-east corner of Washington and Market streets, in said city of Chicago, running south on the east line of Market street, $40\frac{5}{100}$ feet; thence east on a line parallel with the south line of Washington street, $80\frac{75}{100}$ feet; thence north on a line parallel with the east line of Market street, $40\frac{5}{100}$ feet; thence west on the south line of Washington street, $80\frac{75}{100}$ feet, to the place of beginning, being lots 1 and 2, in the assessor's division of lot 4, block 53,

original town of Chicago; that there is upon said lots a brick building, occupying the whole thereof, except the east ten feet in width thereof, it being in height four stories and basement, and built so as to be divided into two stores, each to be twenty feet in width, with vaults in each of them, and that by constructing a partition through the centre of said building, the same could be used and occupied as two stores, to the advantage of the owners of said property; that stores of that size in that locality are in considerable demand, and complainant is informed and believes, and so charges the fact to be, could be rented to the advantage of the owners thereof; that the expense of dividing said building into two stores, by constructing such partition, would not be great, and would be for the advantage and benefit of the owners of the said two buildings when thus divided; that on or about the 1st day of January, 1882, complainant, with said Field, demised said building and premises to a co-partnership, known as Marshall Field & Co., by written lease, for a period of two years, at the annual rental of $1153.68, and the payment of all taxes and assessments for 1881 and 1882; that the term of said lease expired on the 1st day of January, 1883, since which time said firm of Marshall Field & Co. have had no lease of said premises of and from complainant, but have nevertheless occupied said premises, and are still occupying the same, and at the same time have failed to procure from complainant and said Field a lease thereof; that complainant is familiar with the rental value of said property and of property of a similar character in the city of Chicago, and that the fair rental value of said property would, in the judgment of complainant, be not less than $5000 per annum when said premises shall be properly partitioned and divided, as prayed for; that complainant and said Marshall Field are the only persons having any ownership or interest in said property, save the naked possession, without right, of said co-partnership of Marshall Field & Co.; that said premises are divisible, and can be partitioned and

set off in severalty between complainant and said Field, respectively, as now subdivided into said lots 1 and 2, in the assessor's division of lot 4, in block 53, in the original town of Chicago; that the difference in value between said lot 1, on the corner of said Washington and Market streets, and lot 2, south of said lot 1, can be ascertained, and complainant stands ready and willing, and hereby offers, to take either of said lots, and pay or receive one-half the said difference in value between them, as may be adjudged by this honorable court. Complainant offers to pay one-half the cost of a partition wall for the division of said premises, and one-half of the other costs and charges of alterations and additions, if any there be, which may appear necessary to make such division, and make said premises suitable and convenient for the occupation of two different and separate tenants, and to pay to said Field one-half of the rental value of said entire premises during the time the same may be unfit for occupation by reason of the building of said partition wall, and such other alterations and additions as may be necessary, as aforesaid; and complainant agrees that any and all such sums to be paid by him, and which he so offers to pay, shall be a lien upon that part of said premises to be set off to complainant, and may be so declared by decree of this court, and complainant offers to further secure the payment of the same by such bond and security as this court may direct. Other allegations touching the renting or return of the property, the inability of complainant and defendant to make partition, etc., then follow.

The bill makes defendants Marshall Field and other members of the firm of Marshall Field & Co.; calls for answer not under oath; prays for a receiver, and for an account of the rent due since the 1st day of January, 1883, and that the premises may be divided and partitioned; that one-half be set off to complainant and the other half to Field, and that said sum shall be decreed to be paid by the party to whom

said lot 1, on the corner of said Washington street, set off in severalty, to the party to whom said lot 2 shall be set off in severalty, as shall equal one-half the difference in value in the said two lots, and for further and other relief. The bill is signed and sworn to by Leiter. Field answered, not under oath, putting in issue all the material allegations of the bill.

Afterwards, the circuit court decreed as follows: "This cause coming on to be heard, and the parties appearing by their respective solicitors, and said parties having entered into a stipulation in the words following, to-wit: It is hereby stipulated that a decree may be entered in said cause appointing three commissioners to make partition of the premises described in said bill, or report that said premises can not be divided without injury, as the commissioners so appointed shall find the facts; and it is further stipulated that if either party shall file objections to the report made by the commissioners, either party may call witnesses, upon the hearing of said cause, to testify upon the merits of such case, and the report of the commissioners shall not be treated as final or conclusive upon either party, but shall be treated as merely *prima facie* evidence of the facts which are required to be stated in such report. And it is hereby stipulated that nothing herein contained, or any such decree, shall be considered as changing this suit in anywise from a suit in chancery to a suit at law. And the court finding, from the admissions of the parties, that said Leiter is entitled in fee to an undivided half of the premises described in said bill, as follows: Commencing at the south-east corner of Washington and Market streets, in the said city of Chicago, running south on the east line of Market street, $40\frac{5}{100}$ feet; thence east on a line parallel with the south line of Washington street, $80\frac{75}{100}$ feet; thence north on a line parallel with the east line of Market street, $40\frac{5}{100}$ feet; thence west on the south line of Washington street, $80\frac{75}{100}$ feet, to the place of beginning, said premises being otherwise known and described as lots 1 and 2,

in assessor's division of lot 4, in block 53, in the original town of Chicago, and that said Marshall Field is entitled in fee to the other undivided half thereof. And the court being now fully advised in the premises, doth order that partition of said premises be made between said Leiter and Field according to their respective interests; and Josiah Lombard, D. W. Mitchell and Robert W. Hyman, Jr., who are disinterested persons, are hereby appointed commissioners for the making of such partition, and they are directed to examine said premises, and set off one equal half thereof, quantity and quality considered, to said Leiter, and the other half thereof, quantity and quality considered, to the said Field, if the same can be done without material injury to the interests of said parties. And all further orders are reserved until the coming in of said report."

The commissioners, afterwards, on the 17th of April, 1884, reported that the property was unsusceptible of division. Exceptions were filed to this report by the complainant, the second of which was this: "Said premises are capable of division into two parcels of equal quantity, and the difference in value between such parcels can and should be adjusted by award of money to the party to whom the parcel of least value is set off, all of which can be done without material injury to the interests of said Field and Leiter.".

The court afterwards decreed thus: "This cause coming on to be heard on the bill of complaint, as amended, the answer of the defendants and the evidence and proofs, oral and documentary, the report of the commissioners and exceptions thereto, and the judge of said court by whom said cause was heard, having, at the request of all the parties, made an inspection of the premises sought to be divided, and it appearing to the court that the second exception to the commissioners' report is well taken, said exception is sustained, and said report is therefore set aside; and it appearing to the court, from the admission of the parties, that said Leiter is

the owner in fee of an undivided half of said premises, and that said Field is the owner in fee of the other undivided half thereof, and the court, finding from the evidence and from such personal inspection of said premises, that said premises are susceptible of division into two parcels, equal in quantity but unequal in value, that in order to effect such division and convert said premises into two separate buildings, it is necessary to build a partition wall from the east to the west wall of the building now on said premises, the center of which partition wall shall be upon a line running east and west through said building, equi-distant between the north and south line of the premises sought to be divided, and which partition wall shall extend from the cellar of said building to the roof thereof, and that it will also be necessary to build in the southernmost parcel or moiety of said premises, a suitable stairway from the cellar of said building to the upper or fourth floor of said building, and also to make such alterations in the stairways now in said building as to throw them entirely north of said partition wall; and the court, further finding, from the evidence, that it is for the interest of the said Leiter and Field that a partition and division of said premises should be made, as hereinbefore indicated, and that said division can be made without injury to said Leiter and Field, as the owners thereof, and that the party receiving as his allotment of said premises the north half thereof should pay to the party receiving the south half thereof an amount in money equal to one-half the difference in value between said north half and said south half, and that for the time said premises may remain unfit for occupancy by reason of the making of the improvements hereinbefore referred to, said Leiter shall pay to said Field one-half of the rental value for the whole of said premises, which shall be and is hereby declared a lien on the interest of said Leiter in said premises. And the court being now fully advised in the premises, it is ordered that this cause be, and the same is, hereby referred

to Horatio L. Wait, one of the masters in chancery of this court, to take proofs, by depositions of witnesses, and plans and specifications to be submitted and exhibited to said master, as to what will be a suitable partition wall, new stairways and alterations to the present stairways in said building, for the purpose herein indicated, and the cost thereof, and as to what will be the value of the north half and what the value of the south half of said premises when said partition wall and stairways have been completed and said alterations made in the stairways now in said building. And the court further finding, from the admissions of the parties, that the rental value of the said premises has been the sum of $3000 per annum over and above the expense of repairs, since the termination of the lease described in said bill of complaint, it is ordered that said Marshall Field, Woodhouse, Willing, Higginbothan, J. N. Field and Henry Field, do, upon the entry of the final order herein dividing said premises, pay to said Leiter a sum of money which will be equal to one-half of said rental value, from the first day of January, 1883, to the time of the entry of such final order, less one-half the amount paid for insurance upon said premises subsequent to January 1, 1883, by any of said defendants, and all other orders herein are reserved until the coming in of said master's report."

The master afterwards made his report, filing therewith the evidence taken, and the court thereupon decreed as follows: "This cause came on this day to be heard on the master's report, and the proofs and exhibits, and the court finding, from said master's report and the evidence, that the plans and specifications filed as exhibits with the said master's report, describe what will be a suitable partition wall to said building, together with new stairway in the south moiety of said premises, and proper alterations of the present stairways in said building, and that the cost thereof will be $3750, and that the difference in value between the north and south moieties, when said improvements shall be completed, would

be the sum of $8000, it is therefore ordered, adjudged and decreed, that the center line of the partition wall to be erected in said premises shall be midway between the north and south lines of the premises to be divided, and that the north half of said premises, subject to the easement over the ten-foot alley on the east of the premises, be set off and allotted to one of said tenants as his sole and exclusive property, and the south half thereof, subject to the easement over said alley, to the other of said co-tenants as his sole and exclusive property, and that the party receiving said north half pay to the party receiving said south half, the sum of $4000 as owelty of partition, when said improvements are completed; and said north half is hereby decreed to be subject to a lien for the said $4000, in favor of the party receiving said south half, and said party receiving said south half shall have execution therefor, as in cases at law, at any time after said master reports said improvements completed. It is further ordered that this cause be and it is hereby referred to Wait, one of the masters of this court, and that he shall make a contract with any suitable person for the making of such improvement for the sum of $3750, or any less sum, if the said master finds that the same can be done for less, and that said master take from said contractor a bond, with sufficient surety to be approved by said master, for the making and completion of said improvements according to said plans and specifiations, within such time as said master may deem reasonable. It is further ordered that the costs of said master be borne and paid equally by said Leiter and Field, in installments, as they become payable, and in case of the failure of either party to pay his share or any part of his share of any such costs, the other party may pay the same, and every sum so paid for such defaulting party, with interest thereon from the date of payment, shall be a lien in favor of the party paying the same, on the moiety of said premises set off to such defaulting party. And said master is directed to report to this court when such

improvements shall be completed, and by whom the cost thereof shall have been paid, and the date and amount of each of such payments, and shall also report the time during which said premises shall be unfit for occupation on account of the making of such improvements, together with the fair rental value of the whole of said premises during the time they are so unfit for occupation, such rental value being computed on the present condition of such premises. It is further ordered that said defendant, Marshall Field, shall, within thirty days, elect whether he will take the north half of said premises, and pay the said Leiter said sum of $4000 as owelty of partition, or whether he will take said south half and receive said $4000 from said Leiter, and in case he fails to make such election within that time, the court reserves to itself the right to make such further orders as it may deem necessary for the completion of said partition, the allotment to each party of the moieties of said premises, and for compelling the payment of said owelty of partition." Field appealed from the decree.

Messrs. J. P. & T. R. WILSON, for the appellant:

The court erred in finding that the property could be divided without injury to the owners thereof, and also in decreeing that improvements should be made upon the premises sought to be partitioned, and that they should be divided between the owners in unequal shares.

Our statute has always governed in the partition of lands, whether by petition at law or by bill in equity. *Howey* v. *Goings*, 13 Ill. 95; *Dean* v. *O'Meara*, 47 id. 120; *Hickenbotham* v. *Blackledge*, 54 id. 316; *Kurtz* v. *Hibner*, 55 id. 514; *Kilgour* v. *Crawford*, 51 id. 249; *Knapp* v. *Glass*, 63 id. 492; *Labadie* v. *Hewitt*, 85 id. 344; *Miller* v. *McMannis*, 104 id. 426; *Le Moyne* v. *Quimby*, 70 id. 399; *Nichols* v. *Mitchell*, id. 258.

Division, instead of partition with compensation, is not allowable under our statute. *Gooch* v. *Green*, 102 Ill. 507.

Nearly all the cases cited in this country to sustain the power of a court of chancery to award owelty of partition, are based upon statutes especially controlling and authorizing the award of owelty of partition. *Smith* v. *Smith*, 10 Paige, 477; *Graydon* v. *Graydon*, 1 McMullan's Eq. 63; *Cox* v. *McMullin*, 14 Gratt. 91; *Wynne* v. *Tunstall*, 1 Dev. Eq. 28; *Cadman* v. *Pinkham*, 15 Pick. 364; *King* v. *Reed*, 11 Gray, 490; *Wood* v. *Little*, 55 Me. 107; *Darlington's Appeal*, 13 Pa. St. 430.

The English cases are, with but few exceptions, very ancient. *Clarendon* v. *Hornby*, 1 P. Wms. 446; *Turner* v. *Morgan*, 8 Ves. Jr. 143; *Story* v. *Johnson*, 2 Y. & C. Ex. Cases, 611; Daniell's Ch. Pl. and Pr. 1156.

Mr. JOHN S. COOPER, and Mr. GWYNN GARNETT, for the appellee:

There can be no doubt about the general power of courts of equity by, the common law, to equalize a partition by owelty. Bispham's Eq. sec. 492; *Cox* v. *McMullin*, 14 Gratt. 91; *Smith* v. *Smith*, 10 Paige, 470; Pomeroy's Eq. Jur. sec. 1389; Adams' Eq. 230, 231.

The statutory proceeding for partition does not divest a court of equity of its power to grant a partition. Sec. 1 of the act; *Labadie* v. *Hewitt*, 85 Ill. 341; *Hopkins* v. *Medley*, 97 id. 402.

The doctrine of equalizing partition by awarding owelty has never been denied by any court in this country, and in all the States where the question has arisen the power of a court of equity to make such a decree has been recognized. *Railroad Co.* v. *Trimble*, 51 Md. 107; *Davis* v. *Norris*, 8 Pa. St. 125; *Long* v. *Long*, 1 Watts, 269; *Lucas* v. *Peters*, 45 Ind. 318; *Hull* v. *Piddock*, 6 C. E. Green, 311; *Green* v. *Arnold*, 11 R. I. 364.

The power of making changes and alterations in the premises in order to effect a partition, is recognized in *Cooper* v. *Water Power Co.* 42 Iowa, 402; *Smith* v. *Smith,* 10 Paige, 470; *Bank* v. *Taylor,* 44 Iowa, 343.

As to the power of the court to equalize a partition by the payment of money, reference is made to the following authorities: *Turner* v. *Morgan,* 8 Ves. 144; *Story* v. *Johnson,* 24 Y. & C. Ex. 586; *Horncastle* v. *Charlesworth,* 11 Sim. 315; *Mole* v. *Mansfield,* 15 id. 315; *Oliver* v. *Jernigan,* 46 Ala. 43; *Atha* v. *Jewell,* 6 Stuart, 417; *Rutherford* v. *Jones,* 14 Ga. 521; *Dannan* v. *Walker,* 21 Ark. 539; *Bora* v. *Archer,* 7 Dana, 177.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Conceding that it is competent, as a majority of the court do, on the authority of *Howey* v. *Goings,* 13 Ill. 95, *Dean et al.* v. *O'Meara et al.* 47 id. 120, *Wilton* v. *Tazwell,* 86 id. 29, *Labadie* v. *Hewitt,* 85 id. 341, *Hill* v. *Reno,* 112 id. 154, and *Cooter* v. *Dearborn,* 115 id. 509, for a court of equity to decree the payment of a sum as owelty, to equalize the shares on partition of real estate, we can not consent to recognize that such a court can cause expensive improvements to be made upon property, preliminary to a partition, through its master in chancery, against the protest of one of the owners of the property. This decree not only directs the payment of $4000 as owelty, after the partition,—it decrees that the master shall, before the partition, let a contract for certain improvements to be made, under the direction of the chancellor, to the amount of $3750, unless he can obtain a contract at a lower amount. If the evidence can fairly be said to preponderate at all in favor of the expediency of the improvements proposed to be thus made, it is only barely so. A number of intelligent witnesses, including the defendant, express an opinion to the contrary.

Undoubtedly, the principle is well recognized that under some circumstances, as, where property is in the hands of a

receiver, a court of equity will direct the receiver to make repairs for the preservation of the property, and in extreme instances, where the interests of all parties unquestionably require it, it may be that it will direct him to make improvements for the more available and profitable employment and use of the property; but this is justifiable alone by the necessity of the situation. The principle is extremely dangerous, as tending to subvert the rights of private property, and it ought not to be tolerated beyond the limits of absolute necessity. It does not comport with the rights of ownership, or the fundamental principles of personal liberty, that the owner shall be compelled to pay for improving property which his judgment or inclination does not urge him to improve, although all of his neighbors shall unite in opinion that the improvement will be advantageous to him. If the power exists, its limits must, to a large extent, rest in the discretion of the chancellor. The principle that authorizes these improvements will sanction other improvements of a different character, and larger in amount, and thus an owner might be improved into bankruptcy and out of his property. The co-owner may, perhaps rightfully, insist that the other shall contribute for the *preservation* of joint property, but he certainly, upon no correct principle, can insist that he shall enter upon new investments, to be paid for from the joint property or out of other funds belonging to him, against his judgment and inclination.

None of the cases referred to by counsel for appellee go to the extent of this decree in this respect. In *Smith* v. *Smith*, 10 Paige, 470, a sale had been ordered. The court held, that under the evidence the property was susceptible of division, and in the opinion various ways of dividing the water power are pointed out. No improvements were undertaken by the chancellor. In *Lister* v. *Lister*, 3 Young & Collier, 540, a motion was made that the return of the commissioners might be suppressed upon the ground, among others, that it directed the parties to make fences at their own expense. The motion

was overruled. The court itself did not undertake to make any improvements, nor did it hear evidence and determine that improvements should be made, but confirmed merely the action of its commissioners in determining that the parties themselves should make fences to protect their premises. The concluding language of ALDERSON, B., is: "The object of the partition is, that each may enjoy in severalty, and it seems to me that a direction to each to erect a fence, to prevent the intrusion of his neighbor's cattle, is quite reasonable, and is, in truth, necessary to enable each to enjoy the land in severalty." So the decree was only that the parties themselves should do that which their interests would doubtless have prompted them to do without any decree. *Cooper* v. *Cedar Rapids Water Power,* 42 Iowa, 398, was like *Smith* v. *Smith, supra.* The court ordered no improvements to be made under its supervision, but simply declared the mode by which the water power should be divided. In *First National Bank of Ottumwa* v. *Taylor,* 44 Iowa, 343, the only controversy about the building of the partition wall was, whether it should be extended above the roof. There is no decision or discussion of the right of a court of chancery, by virtue of its powers as such, to make improvements, in case of partition, without the consent of one of the parties.

These are the only cases cited in support of the action of the circuit court, and we are aware of none going any further in that direction.

We are of opinion that the decree below can not be sustained. It will therefore be reversed, and the cause remanded for further proceedings consistent with the views herein expressed. *Decree reversed.*

Separate opinion by Mr. CHIEF JUSTICE SCOTT:

I concur in the decision rendered in this case, and also in some of the views expressed by Mr. Justice SCHOLFIELD; but as there are other considerations that I think better sustain

23—117 ILL.

the decision, I can not forbear stating some of them. The question of most importance is as to the jurisdiction of the court to render the decree it did. In its decision it seems quite clear the court traveled-out of its jurisdiction as limited by the statutes of this State, whatever may have been the power of a court of chancery in England in matters of partition. The forms adopted in proceedings in partition of estates in chancery, in England, have never been adopted or followed in this State. Indeed, it would seem to be impracticable to do so. In most of the American States the mode of making partition has been regulated, in a large measure, by statutes. As will be seen further on, it has always been done under enabling statutes in this State.

The absurdity of claiming to make partition of estates in this State as was once done in England, in courts of chancery, will be apparent by ascertaining, as near as may be, what the practice was. Mr. Daniell, in his work on Chancery Practice, says, in case of partition of an estate by courts of chancery, in England, if the titles of the parties were in any degree complicated, the difficulties which had occurred in the proceedings at law led to applications to courts of equity for partitions, which were effected by first ascertaining the rights of the several persons interested, and then issuing a commission to make the partition required, and upon the return of the commission, and the confirmation of that return by the court, partition was finally completed by mutual conveyances of the allotment to the several parties. Where the title of the parties was clear on the record, it seems the court would, at the original hearing, order a commission of partition to issue, in the first instance, without any previous reference to the master. The author says the commissioners acted as a court. The parties or their solicitors were permitted to attend, and were permitted to produce their deeds and other evidence, as well written as oral, and to point out anything that might tend to give the commissioners full information on

the subject, and to take every step necessary to discover the truth, and to enable the commissioners to make a proper return. The duties of the commissioners were definitely pointed out. They were directed to "go to, enter upon and walk over the estate" to be partitioned. They were required to look into the bill and the answer, and the pleadings were made their guide as to the estate to be divided, and the manner in which it was to be done. Having in that way ascertained what estate was to be divided, they were next to make a "fair partition, division and allotment thereof into as many shares and proportions as the decree directs should be done." It seems the parties themselves were permitted to name the commissioners, and they were therefore regarded as "judges of their own choice," and it was for that reason it was said the principles applicable to arbitration were applicable to them. But for any gross error of judgment, however, the court would set aside their adjudication. It was not necessary, in making partition in chancery, every part of the estate should be divided. It was sufficient if each party had allotted to him his proper share of the whole. All the forms to be observed, and the manner of making the allotments after a division was agreed upon, are fully stated by Mr. Daniell in his work on Chancery Practice, in the section on "Partition." 2 Daniell's Ch. Prac. (1st Am. ed.) p. 1326. In some cases it was found it was impracticable to divide the property in equal shares, quantity and quality considered, and the practice was adopted at an early day of making a money compensation to the party receiving the least valuable parcel, by way of securing equality of partition. The practice, perhaps, at first pertained to the division of estates between co-partners, and afterwards it seems to have been extended, by statute, to the partition of estates between joint tenants and tenants in common. It is most probable the practice had its origin in the necessity arising from the want of power in the courts to order a sale of property. A statement of this doctrine is found in the

early case of *Clarendon* v. *Hornby*, 1 P. Wms. 447, where it is
said: "If there were three houses of different values to be
divided among three, it would not be right to divide every
house, for that would be to spoil every house; but some com-
pensation is to be made, either by a sum of money, or rent,
for owelty of partition, to those that have houses of less
value." This case, stated by the chancellor for the applica-
tion of the rule, has been re-stated by most of the text writers
on this subject, and is a case that illustrates the doctrine as
well as any to·be found in the books.

It is needless to pursue this investigation further, or to in-
quire whether a sum of money or rent was awarded as for
owelty of partition, under the practice that once prevailed in
chancery, in England, was made with or without the consent of
the parties, or only in particular cases coming within a definite
rule, as enough has been said to make it certain no such prac-
tice has ever prevailed in this State. In some of the American
States owelty of partition is made by decreeing the payment of
money to the party to whom the portion of the estate of least
value is allotted, but in most, if not all, of the cases to which
the attention of this court has been called, it was done either by
consent of the parties capable of giving consent, or under the
provisions of an enabling statute or code on the subject. That
is so in the following cases: *Smith* v. *Smith,* 10 Paige, 447;
*Cox* v. *McMullan,* 14 Gratt. 91; *Darlington's Appropriation,*
13 Pa. St. 430; *Wood* v. *Little,* 35 Maine, 107; *King* v. *Reed,*
11 Gray, 490. A statute of Massachusetts provided, where,
on petition for partition of lands, "any *messuage,* tract of land
or other real estate, shall be of greater value than either
party's purpart or share in the estate to be divided, and can
not, at the same time, be subdivided, and part thereof as-
signed to one and part to another, without great inconvenience,
the same may be settled or assigned to one of the parties,—
such party to whom the same shall be so assigned paying such
sum or sums of money to such party or parties as, by means

thereof, have less than their share of the real estate, as the committee appointed to make partition shall award." And in *Codman* v. *Tinkham*, 15 Pick. 364, it was held the statute was not applicable where there was but one parcel of land which was held jointly, and for that reason approved the judgment of the court of common pleas, which rejected the report of commissioners, by which they assigned to one the whole of the estate because it could not be divided without detriment, and awarded to the other so much money for his share in the land to be divided. It was for the reason there was no statute that authorized it to be done, the court considered the disposition made of the land was not authorized by law. There is not now and never was any statute in this State that authorized the commissioners appointed to make a partition to give a sum of money to any one to whom a share less in value than he was in fact entitled to, by way of owelty of partition, and certainly it can not be done by the court, unless the court can exercise the same powers in that regard as may have been done at one time by courts of chancery in England.

If it should be conceded, which it is not, the courts of chancery in this State might properly exercise the same powers in such matters as the English courts of chancery once had, it would be fatal to the present decree the court did not conform, in this case, to the practice in such courts, in any essential particular. No such formalities as the English courts observed were conformed to in this case, as is quite apparent from what has gone before. But the decision might be placed on the broader ground, courts of chancery in this State have no power to award a money compensation to secure owelty of partition. The whole matter of making partition in this State, as it is in most of the States, is regulated by statute, and the courts in such proceedings, whether at law or in chancery, must conform to the mode provided by statute, and may not proceed otherwise. All the early statutes in this State, on this subject, had relation to, and were intended, no doubt, to regu-

late proceedings on petition for partition in the law courts, and it was evidently intended the method provided should take the place of the common law remedy by writ of partition. But it was not intended to confer on the law courts exclusive jurisdiction in that respect. As appears from numerous cases in this court, equity assumed to exercise jurisdiction in matters of partition concurrently with the courts of law. In the early case of *Howey* v. *Goings*, 13 Ill. 95, it was held the jurisdiction of courts of equity, in matters of partition, was undoubted. In many cases prior to the act of 1861, which enlarged the jurisdiction of the law courts in such matters, the interposition of courts of chancery was indispensable to adjust conflicting rights and to do complete justice between the parties. But it is to be noted, courts of chancery, in cases in the mere matter of making partition of the estate, followed closely the statute, and no case is now recalled where there was any marked departure from the statutory mode. So closely did the courts of equity follow the statutory mode of making partition, it was said by this court in *Nichols* v. *Mitchell*, 70 Ill. 258, "the mode of procedure in either court is so nearly alike that some difficulty is experienced in determining which forum the party has selected," and it was held in this same case, the court would treat the proceeding as being at law, or in chancery, as best sustained the jurisdiction of the court making the order for partition. It was not a matter of any consequence whether the proceedings were at law or in chancery, for the mode of making partition in either court was practically the same. Often courts of equity granted relief as to other matters connected with the partition of estates, that courts of law had no jurisdiction to do. It was only in that way their proceedings in matters of partitions differed. Each court may have followed its own peculiar rules of procedure, but the conclusion reached and the thing accomplished,—that is,—the partition of the estate,—were the same, no matter in which forum it was done.

The earliest act of the General Assembly of this State, in relation to partition, was passed at its session in 1819. That act provided that where the property was so circumstanced a division could not be made without great prejudice to the owners, and the commissioners appointed to make partition so reported, it was made the duty of the court to order its sale, and the proceeds were to be divided according to the interests of the respective parties. The act of 1827, for the speedy assignment of dower and partition of real estate, repealed the act of 1819, and provided that partition might be made by the circuit court, on petition. It was to be done by three commissioners appointed by the court. Section 2 of the act of February 20, 1819, was substantially reënacted as section 16 of the act of 1827, and provided where any lands, houses or lots are so circumstanced that a division thereof can not be made without manifest prejudice to the proprietors of the same, and the commissioners appointed by the court shall so report, the court shall thereupon give an order to the commissioners, or other person or persons, to sell such real property. It was made the imperative duty of the court, in all cases where the commissioners reported a division could not be made without manifest prejudice to the proprietors, to order a sale of the property. The substance of section 16 of the act of 1827, has been retained in all the revisions of the statute on the same subject, down to the present time. That section was almost, if not quite, literally transcribed into the revision of 1845. The same mode of procedure subsequent to the report of the commissioners against the divisibility of the property, is still provided for in the statute now in force in relation to partition. The present, as well as all former statutes of this State, provides, when the whole or any part of the premises sought to be partitioned can not be divided without manifest prejudice to the owners, and the commissioners appointed to divide the same shall so report, the court shall order the premises so not being susceptible of division,

to be sold.   It will be noticed the language of the statute is, not that the court may order the sale of the property in such case, but that it shall do it.   It is also to be noted the statute in force July, 1874, and under which the proceedings in this case were had, provided partition may be compelled by bill in chancery, as heretofore, or by petition in the circuit court. Of course, if the proceedings were on petition for partition in a court of law, no one would insist partition would be made otherwise than as the statute directs.   But is not this statute as obligatory on courts of equity as upon the courts of law, in the mere matter of making partition?   How was partition of estates heretofore compelled by bill in chancery?   The answer is obvious.   It was done by following the mode provided by statute and not otherwise,—that is, no matter whether the proceeding was in a court of chancery by bill, or in a court of law on petition,—the practice was from the first to appoint three commissioners to make partition of the estate among the owners, and in case the commissioners reported it was impracticable to make such partition without manifest prejudice to the owners, the invariable practice was to follow the statute, and order a sale of the property and divide the proceeds.   The rule of procedure in this regard has been the same since the State government first went into effect, and it has not heretofore been departed from by any court, either of law or equity, in this State.   It is absurd to be supposed that when the General Assembly declared partition might be compelled by bill in chancery, as "heretofore," it was meant it might be done as was once the practice in English courts of chancery.   No such practice heretofore existed in this State at any time.   On the contrary, as has been seen, the practice has always been, whether the proceedings were in chancery or at law, to appoint commissioners, as the statute declares shall be done, to make partition, and on their report that partition could not be made without manifest prejudice to the owners, then to order a sale of the premises.   The statute in that

respect has heretofore been regarded as obligatory upon all courts having jurisdiction to order partition, and no reason is perceived why it does not control as to the method of making partition, to the exclusion of all other modes. And certainly, when the legislature provided partition might be compelled by "bill in chancery, as heretofore," it was meant it should be done, as had been the invariable practice, in accordance with the statute. Any other construction would be most unreasonable.

Although this question has never before been presented to this court so distinctly, perhaps, as in this case, still the principle that must control has been determined by the decision of this court in *Gooch* v. *Green,* 102 Ill. 507. The bill in that case was to impeach a decree rendered in a proceeding to partition certain lands. Whether the proceedings in partition sought to be impeached were by bill in chancery or by petition at law, does not appear, but from the fact it is constantly referred to as a bill to impeach a decree for fraud, it might be fairly inferred the original proceeding was by bill in chancery. But how that may be, matters little. It was distinctly held by this court that where a decree for partition found six-sevenths of the land in one party and one-seventh in another, the commissioners appointed to divide the land had no authority to give one party more than his share, as found by the decree, and require him to pay therefor a certain sum of money to the party receiving less than his share of the property. This court placed its decision on the distinct ground the commissioners had no authority, under the statute, to make such division of the land. Had it been understood a court of chancery had authority in this State to render any such decree independently of the statute, as the English courts of chancery may have had, undoubtedly this court would have treated the original proceeding in partition as being in chancery, in order to sustain the jurisdiction of the court to pronounce the decree it did, as was said in *Nichols* v. *Mitchell,*

*supra,* would be the proper practice. But nothing of that kind was done, and it must have been determined neither a. court of law nor equity had any authority, by a statute or otherwise, in this State, to make any such division of the property. Many cogent reasons might be suggested as sustaining the correctness of the decision in *Gooch* v. *Green, supra,* were it necessary to do so. It will be remembered, from what has gone before, the General Assembly, at its first session under the first constitution of the State, made provisions for the partition of estates, and since then the subject has often been before it for legislation. Had it been expected courts of equity would assume to order partition otherwise than as in the manner directed by statute, or had it been expected such courts would assume jurisdiction to award owelty of partition under what may have been supposed to be general chancery power, undoubtedly the manner of doing it would have been regulated by statute, as is done in many other States of the Union. But nothing of this kind has ever been done. Besides these considerations, a sale of the property where a division is found to be impracticable, accords best with our sense of right and equality, and a due regard for public convenience and the rights of owners.