**PARKER et ux. v. COFFEY et al.**

No. 4822.

Court of Civil Appeals of Texas.
Beaumont.

Dec. 4, 1952.

Rehearing Denied Jan. 14, 1953.

Charles S. McMillan and J. L. Smith, San Augustine, for appellant.

Ramsey & Ramsey, San Augustine, for appellee.

WALKER, Justice.

The plaintiffs, who are the appellees in this court, sued F. K. Parker and wife, Kate H. Parker, in trespass to try title to recover the title to and the possession of an undivided one-half interest in a parcel of land in the town of San Augustine

which is described in the judgment as "a part of Lots 115 and 78, in Block 12, as shown by the original map and plat of the City of San Augustine, being approximately 40 feet by 100 feet, known as the Mrs. Janie W. Phillips property" and also as the land conveyed in a certain deed. Plaintiffs prayed for partition in kind, if that was possible and if it was not, then for a sale of the property and division of the proceeds.

Mrs. Janie W. Phillips, who was a resident and a citizen of Alabama, owned this parcel of land at the time of her death. She died in Alabama on June 25, 1944, intestate, and the plaintiffs are some of her heirs. In that capacity they own the one-half interest sued for by them unless the defendant F. K. Parker showed himself entitled to it under the option hereinafter mentioned, given him by Mrs. Phillips. The title to the other undivided one-half interest in the property vested in Mrs. Phillips' sister, Mrs. Carrie C. Bostick; and on August 3, 1945, Mrs. Bostick, joined by her husband, conveyed this one-half interest and other property to C. L. Whitton. On December 29, 1945, the said C. L. Whitton and his wife conveyed to the defendant Kate H. Parker, as a part of her separate estate, the property which had been conveyed to him by Mr. and Mrs. Bostick.

On January 10, 1939, Mrs. Phillips gave the defendant F. K. Parker a power of attorney which was proved only in part but which, according to the defendants' allegations (made by way of exhibit) authorized Mr. Parker to manage and control this property as her agent; and in this document Mrs. Phillips also gave to Mr. Parker the following option: "* * * I also agree to and with the said F. K. Parker aforesaid that he shall have the sole, exclusive option and right to purchase said building at my death, if not before, upon the payment to my estate of Four Thousand ($4,000) Dollars." On the date of this power of attorney a building was situated on the parcel of land which is involved in this suit and the building mentioned in this option is the building on the property. This building still exists, and

the defendant F. K. Parker contends that the option covered the parcel of land as well as the building and that he exercised the option after Mrs. Phillips' death and he came thereby entitled to the entire parcel.

The defendants filed a joint answer which it is unnecessary to describe. They also filed a cross-action in which they plead the option, alleged the death of Mrs. Phillips, the appointment in Alabama of the plaintiff Alice Coffey Owen and one Hugh Reed as administrators of Mrs. Phillips' estate, and certain acts by Mr. Parker which were alleged to have effected an acceptance of the option. Defendants alleged further that Mrs. Bostick's deed to Whitton, conveying the one-half interest inherited by her from Mrs. Phillips, was made at Mr. Parker's request, in recognition of the option; and in their answer they expressed a tender of $2,000 in payment for the one-half interest inherited by the plaintiffs. Defendants prayed for specific performance of the option. They also alleged certain expenditures made by them for the benefit of the common estate, and, in the alternative, prayed recovery of one half of the total sum so expended.

The plaintiffs filed a supplemental petition, which they amended, and both the plaintiffs and the defendants made trial amendments of their pleadings; but it is unnecessary to describe any of these pleadings.

The cause was tried to a jury, to whom the trial court submitted seven Special Issues. Six of these issues referred to expenses which Mr. Parker said that he had made in repairing the building on the property and are not material to this appeal. Special Issue 7, with the definition accompanying it and the jury's answer to this issue read: "Do you find from a preponderance of the evidence that F. K. Parker exercised his right to purchase the undivided one-half interest of plaintiffs in the brick building and lands in controversy under the right conferred upon him by Janie Coffey Phillips within a reasonable time after the death of Janie Coffey Phillips? Answer: *He did not*. Reason-

able time as used in the foregoing instrument means such length of time as may fairly and properly and reasonably be allowed or required having regard to the nature of the act or duty and to the attending circumstances; that time which as rational men the parties to a contract ought to have understood each other to have in mind; means that time which preserves to each party the rights and advantages he possesses and protects each party from losses that he ought not to suffer."

On this verdict the trial court rendered judgment in behalf of plaintiffs against the defendants for the title to and possession of the undivided one-half interest sued for by them and specifically denied the defendants any recovery under the option. The trial court's judgment contains the finding that "a fair and equitable division" of the parcel of land involved in the suit could not be made, and ordered "that the land owned in common be sold and that the proceeds be divided," one-half to the plaintiffs and one-half to the defendant Kate H. Parker, whom the trial court found to be the owner of the other undivided one-half interest in this land. The trial court also made a statement of the accounts between the parties and rendered a personal judgment in behalf of the plaintiffs against the defendants for $1,017.65, which was found to be the balance owed to the plaintiffs above the sum which they owed to the defendants, and the judgment directed that execution issue in satisfaction of this item.

From this judgment the defendants have appealed, assigning eight Points of Error for reversal.

## OPINION

Point 1 is overruled. If the trial court erred in overruling the special exception, this did the defendants no harm. The plaintiffs did not deny Mrs. Parker's title to an undivided one-half and the defendants, or Mr. Parker, only claimed the other one-half under the option. The plaintiffs' supplemental petition, as finally amended, alleged that the plaintiffs and Mrs. Parker owned the land in common, each owning a one-half interest therein, and so did the defendants' answer, subject, of course, to Mr. Parker's claim under the option.

■ Point 2 assigns error to the exclusion of that part of Mrs. Parker's power of attorney to Mr. Parker which did not concern the option. Point 2 is overruled. In the first place, there is no independent bill of exceptions and the statement of facts does not contain a complete copy of those parts of the power of attorney which were excluded. However, an examination of the terms of the document which the defendants alleged (by way of exhibit) to be the power of attorney shows that the terms of the option were fully proved and that the provisions excluded are immaterial to any issue on this appeal. The power was revoked by Mrs. Phillips' death in 1945, but it does not appear that Mr. Parker's authority to deal with the property as he did was in issue.

Point 3 reads: "This case should be reversed because the court erred in failing to render judgment for specific performance of the contractual rights of F. K. Parker as against the plaintiffs as given to him by and through the power of attorney from Janie Coffey Phillips."

■ It was a question of fact whether Mr. Parker made any effort to exercise his option. Mr. Parker's testimony did raise the issue that he told both Reed and Mrs. Owen (appointed as administrators of Mrs. Phillips' estate by a probate court in Alabama) when they were in San Augustine about September 1, 1944, that he wanted to, and was able to exercise his option, and further, that he later told Reed this in Alabama, and that in Alabama he talked with William Coffey and Mrs. Bostick about the option. However, Mrs. Owen contradicted him. Some of her testimony is to be construed as denying that Mr. Parker made any effort to exercise the option. Mr. Reed was dead when this cause was tried, and if Mr. Reed was attorney for her and the other plaintiffs, as Mr. Parker thought he was, the jury could have inferred that he would have told Mrs. Owen of any conversations between him and Parker about the option. For the de-

tails of the testimony we refer to the supplemental findings, which we have filed separately and apart from this opinion (under authority conferred by Texas Rules of Civil Procedure, rule 453) because only the parties are interested in the matter; and these supplemental findings are to be read with this opinion as a basis for our adjudication of Point 3.

■ The only special issues submitted concerning Parker's exercise of the option was Issue 7, which inquired whether Parker "exercised his right to purchase the undivided one-half interest of plaintiffs' in the brick building and land in controversy under the right conferred upon him by Janie Coffey Phillips within a reasonable time after the death of Janie Coffey Phillips." The answer returned to this issue was "I did not." It is not clear to us that the defendants assign error to the sufficiency of the evidence to sustain this finding; but since it was a question of fact as to what Parker did, the answer is supported by the proof.

The first tender by Mr. Parker which was proved as a matter of law was made in the defendants' pleading, and as we have stated the suit was filed more than five years after Mrs. Phillips' death.

■ Mr. Parker was bound to procure such findings as were necessary to show that he had exercised his option.

We are not satisfied that Mr. Parker properly construed the option and that he was authorized to purchase the property piecemeal from the heirs as he attempted to do. It was not proved as a matter of law that he ever offered to pay the purchase price of $4,000 to Mrs. Phillips' administrators. However, the construction of the option is immaterial since it was a question of fact as to what Mr. Parker did under his option.

Points 4, 5, 6, and 7 bring forward matters concerning that part of the trial court's judgment which ordered a sale of the property and a division of the proceeds instead of a division of the property in kind. Point 4 assigns as error that the trial court did not submit to the jury the question whether "the land and building in controversy are susceptible of partition." Point 5 assigns error to the trial court's refusal to submit the defendants' requested issue 7, inquiring "whether or not the building and lots in question were susceptible of a fair and equitable partition between the plaintiffs and the defendants by setting aside to plaintiffs jointly one-half thereof and to the defendants one-half thereof." Point 6 assigns as error that there is no evidence that "the property in controversy is not susceptible of a fair and equitable partition in kind." Point 7 assigns as error that "there is no evidence that any injury would result to the building by partitioning same in kind."

The property referred to in these four points is the parcel of land involved in this suit, with the building on it, and it is owned in common by the plaintiffs and the defendant Kate H. Parker, one-half by the plaintiffs and one-half by Mrs. Parker. The interests of the parties are equal. The property, then, belongs to 8 persons of whom one owns half and each of the others owns one-fourteenth.

The property consists of a narrow lot in the business district of San Augustine which is covered by a brick building. The defendant F. K. Parker, who was in a position to know the facts, testified that the lot was $37\frac{1}{2}$ feet wide, that the interior width of the building was 36 feet 6 inches, and that the length of the building was 100 feet. Some other witnesses testified to estimates of these dimensions, and the description in the judgment is itself an approximation and not a precise statement of these dimensions. However, the witnesses other than Mr. Parker did not undertake to speak precisely, the difference between them and Mr. Parker is slight, and at least for the purposes of discussing the defendants' points of error Mr. Parker's testimony may be taken to be accurate.

This building, as we have previously stated, was of brick, but it had a front of concrete and glass. The entrance to the building was in the front; this was a single entrance, through a double door. The building had a concrete floor and plastered walls, and it was not divided by interior partitions. The building was evi-

dently one large rectangular room, and we infer that it was one story in height. It contained a balcony and some other improvements, but the proof did not show where these were placed. The nature of the construction of the roof was not proved, but the roof was obviously substantial. It had once been covered with tin, but this tin had been blown away by a cyclone in 1943, and it had been replaced with a cover of tar and felt.

The building faced and opened upon the public square, or plaza, in the town of San Augustine. It was commercial property at the time of trial and had been for many years. Mr. Parker testified that from July 23, 1947 to January 1, 1950, this building was occupied by one Hall, to whom he had rented it, and who carried on a mercantile business in it during this time. Hall seems to have been a grocer. On January 5, 1950, Mr. Parker had rented the building to Buckalew, and this tenant had remained in possession since that time. Mr. Buckalew operated a furniture store. Hall had paid Parker $75 a month as rent, and Buckalew's rent was $85 a month. Mr. Buckalew had paid one full year's rent in advance on January 5, 1950. Plaintiffs' suit was filed during this year, and Mr. Buckalew had paid no rent since that time because of the dispute about the title, but he admitted his liability for rental in the sum stated, and he expressed his willingness to pay it to the person entitled. Mr. Parker said that he had instructed Buckalew to withhold rental payments until the litigation was disposed of. Several witnesses testified as to the rental value of the premises, and agreed that the rents actually paid were the fair rental value of the property.

Some repairs and improvements were made when Mr. Buckalew took possession in January, 1950 and the building was in good condition at the time of trial.

Only one method of dividing the property in kind was testified to, and this method consisted in the erection of a wall down the center of the building from the front to the back, dividing the building into halves, one of which the defendants would have the court set aside to Mrs. Parker in severalty and the other to the plaintiffs in common. Mr. Parker testified that this could be done. He said: "It can be made two buildings 18 feet wide * * * 17 feet, and you can put in an 8 inch wall through there, and you will have two buildings 17 feet and 11 inches each side, and 100 feet in length."

The common estate which is in litigation contains no funds with which to erect such an improvement and the defendants did not offer to pay the expense. The plaintiffs did not want to divide the property in this way.

The building was injured by a storm in 1943, and Mr. Parker testified that for more than 20 years prior to this storm the building had been divided into two parts by a wall down the center and that throughout this period tenants (of whom he was one) had occupied the separated halves of the building. The building was repaired after the storm, and either then or later the partition wall which divided the building was removed. The building was not divided at the time this cause was tried. The entire building had been occupied by Hall and Buckalew; and we infer that they took possession of the property after the partition wall had been removed.

There was evidence that another commercial building in the same area and of approximately the same width as the building in suit, although slightly narrower, was partitioned by a center wall made of wood, and that both parts of this building were occupied by tenants. There was another divided building in the same block as the building in suit was, but the dimensions of this building were not proved.

 Points 4, 5, 6, and 7 are overruled. It is obvious that the property owned in common could not be partitioned in kind among its 8 owners without destroying its value, and it would have been erroneous, under the circumstances, to have set aside one-half of the property to Mrs. Parker in severalty and the other one-half to the plaintiffs in common. Without the erection of a partition wall, which would also have required some al-

teration in the front and back and in the roof of the building, the partition would have been incomplete, and the failure to complete it would have been an encumbrance not only on the value but also on the use of the respective halves of the building. Doubtless the building could have been divided by a central wall as Mr. Parker testified, but the plaintiffs do not want to erect a wall; and while it may be that the trial court has potential jurisdiction in some case of driving necessity to accomplish a partition in kind by the erection of such an improvement, with the resulting changes in other parts of the structure, we think that there were no circumstances in proof which authorized such a proceeding here. The following language of the Supreme Court of Illinois in Field v. Leiter, 117 Ill. 341, 7 N.E. 279, which discusses a judgment directing the erection of such an improvement by a master seems in point here: "Undoubtedly, the principle is well recognized that under some circumstances, as where property is in the hands of a receiver, a court of equity will direct the receiver to make repairs for the preservation of the property, and, in extreme instances, where the interest of all parties unquestionably requires, it may be that it will direct him to make improvements for the more available and profitable employment and use of the property. But this is justifiable alone by the necessity of the situation. The principle is extremely dangerous as tending to subvert the rights of private property, and it ought not to be tolerated beyond the limits of absolute necessity. It does not comport with the rights of ownership, or the fundamental principles of personal liberty, that the owner shall be compelled to pay for improving property which his judgment or inclination does not urge him to improve, although all of his neighbors shall unite in opinion that the improvement will be advantageous to him. If the power exists, its limits must, to a large extent, vest in the discretion of the chancellor. The principle that authorizes these improvements will sanction other improvements of a different character, and larger in amount, and thus the owner might be improved into bankruptcy, and out of his property. One co-owner may perhaps rightfully insist that the other shall contribute for the preservation of joint property; but he certainly, upon no correct principle, can insist that he shall enter upon new improvements, to be paid for from joint property, or out of other funds belonging to him, against his judgment and inclination." See, also: Brown v. Cooper, 98 Iowa 444, 67 N.W. 378, 33 L.R.A. 61; Gilman v. Boden, 136 Mich. 125, 98 N.W. 982 and Thompson Estate Co. v. Kamm, 107 Or. 61, 213 P. 417, 28 A.L.R. 727, with its supplemental decisions. It seems to us that the trial court's order directing a sale and a division of the proceeds was required by the circumstances in proof.

Point 8 assigns as error that an unqualified person sat on the jury. It is claimed that a person who was not drawn as a juror by the jury Commissioners appeared and served in the place of a person whose name the Commissioners did draw. The proof shows that the name "Baxter P. Cartwright, Jr." was drawn by the Commissioners, was put on the sheriff's list for notification, and was put on the list of the jurors given the defendants' counsel by the clerk. The clerk's record also lists this as the name of the juror who did serve, and the clerk testified that he called out this name in the courtroom when he called the names of the panel. The defendants' counsel also said that this name was called. There is a person named Baxter P. Cartwright who uses the name "Baxter P. Cartwright, Jr.," but he was not summoned and he never appeared at the trial of the cause. Instead, his father whose name was also Baxter P. Cartwright, appeared among the panel for the week and served as a juror on the trial. The son testified, in effect, that the father did not use "Jr." as a part of his name. However, the sheriff's return of service on the list of jurors shows that "Baxter Cartwright" was summoned, and it is evident that the deputy sheriff who notified the panel did summon the father and that he identified the person summoned by him as the person named in the list of jurors drawn. The list of jurors chosen for serv-

ice on the jury shows the name "Baxter P. Cartwright." The clerk said that he knew the father, and thus he, too, identified the name as that of the father's. These circumstances, of course, conclusively show that the father thought that he was the person called for jury service and that he never attempted to substitute himself for his son; and the circumstances suggest further that either the "Jr." was not brought to the father's attention by the deputy sheriff and was not called out in the courtroom or else that the father did think that the term applied to him and did sometimes use the term as part of his name. The defendants' counsel who examined the jury panel was personally acquainted with both the father and the son and he realized that the father was the person who had been chosen to sit as a juror and actually did sit on the jury, and defendants made no objection to the father until after verdict had been returned and motion for new trial was filed. However, defendants' counsel testified: "At the time that Baxter P. Cartwright, Jr.'s name was called, and the answer of present was made, I remember that Baxter P. Cartwright, who I didn't know at that particular time was named Senior or Junior, but Baxter Polk Cartwright came around and took his seat with the other members of the panel. He was sitting over here in this portion of the room and he answered the name at that time of Baxter P. Cartwright, Jr., and I assumed that was his correct name until later." The father was not called to testify at the hearing had of the motion for new trial, but since the court qualified him as a juror and since he actually served as a juryman, he must be taken to have been otherwise qualified to serve on the jury.

■ Point 8 is overruled. We are not satisfied that the proof shows as a matter of law (as it would have to do) that the person who served was not the person named on the list of jurors drawn. However, it is quite clear that Mr. Cartwright acted under the mistaken impression that he had been called for jury service and that he intended no substitution of himself for his son. There is, then, no question of willful wrong. Defendants' counsel was misled by the circumstances, but no affirmative misrepresentation was made to him, and he accepted the juror, knowing who he was; and since the only qualification which the juror lacked was the fact that his name had not been drawn by the jury Commissioners, we think that the objection came too late after verdict. Rice v. Dewberry, Tex.Civ.App., 93 S.W. 715, at page 717, cited in: El Paso Electric Co. v. Whitenack, Tex.Com.App., 1 S.W.2d 594; McDonald's Texas Civil Practice, Sec. 11.05.

These conclusions adjudicate all Points of Error assigned. The judgment of the trial court is affirmed.