## DAVIS *v.* CHAPMAN.

*(Circuit Court, D. Indiana. August 18, 1888.)*

1. TENANCY IN COMMON—RIGHTS OF CO-TENANTS—ACCOUNTING—MORTGAGE PURCHASER ON FORECLOSURE.

The co-tenancy of a purchaser at a sale on foreclosure of the interest of a tenant in common in real estate commences, for the purpose of an accounting between the tenants, from the date of the deed, and does not relate back to the date of the mortgage, and the accounting should embrace no charge for repairs or improvements made or taxes paid by either tenant prior to the date of the deed.

2. SAME—USE AND OCCUPATION—REPAIRS—SET-OFF.

While one tenant in common cannot recover of another for mere occupation of the premises, yet such occupation may be considered and made an equitable set-off against the occupying tenant's claim for repairs, which, in the absence of an agreement, is likewise not the subject of an action between co-tenants.

In Equity. Action for partition and accounting.

The action is for partition of real estate, and for an accounting in respect to rents and profits. The defendant claims a set-off for repairs and improvements and for taxes paid. The title of the complainant has been established in an action at law in this court, and for the history of that title, and the disputes and litigation of the parties over it, reference is made to the decision in 24 Fed. Rep. 674. Upon the matters now in question the master says:

"This suit is the last chapter in the litigation that has been in progress between the parties in different courts and in various forms for ten or eleven years; complainant making claim to the ownership of the undivided half of certain real estate (hotel and livery stable property) in the city of Warsaw, Kosciusko county, this state. Chapman, the defendant, until the May term

of this court, 1885, denied the title of the complainant; but this court at that time, in an ejectment suit on the law side of the court, gave judgment against him, and confirmed plaintiff's title as owner of the undivided half of the property. In its present form, this is a suit for partition and sale, with a prayer that defendant account to complainant for the half of the rents and profits of the real estate during the period of her ownership. The bill as originally filed in this case was of much wider scope, and contains a history of the efforts of the defendant, Chapman, to secure title to the plaintiff's undivided half of the real estate by means of tax deeds, the foreclosure of mortgages, and various other legal proceedings, which have enabled the defendant to retain the possession of the premises, and which litigation has subjected the complainant to great expense in defending her title and enforcing her rights. The evidence shows, in the master's opinion, that the efforts of the defendant to defeat the title of Mrs. Davis do not exhibit him in the light of a man who was seeking in good faith to assert and maintain his legal rights, but rather as a litigant who was doing everything in his power to vex and harass her by futile but expensive lawsuits. It was said at the argument, for the defendant, that in the present proceeding these considerations could have no proper weight in the matter of accounting; that, the judgment of this court in the ejectment suit having settled and confirmed Mrs. Davis' title, there remained nothing to be done but an examination of the accounts of the defendant, with a view of ascertaining the amount of rents with which he should be chargeable, and the deductions or credits to be made in his favor on account of necessary and proper repairs and taxes. While this may be true, the master thinks that, in view of the fact that the defendant has been in the wrongful possession of the complainant's property for so many years, he should be charged with the full value of the rentals coming to his co-tenant, rather than the amount he charges himself with as having been actually received therefor. It appears in the evidence that the defendant was the owner of some furniture and other personal property which is used in the hotel. In making his contracts with tenants he would apportion the amount, allowing so much for the real estate, in which the plaintiff had half interest, and so much for the use of the furniture, of which he was the sole owner. In the master's judgment, these apportionments were inequitable. The property is a three-story brick hotel and basement, sixty-six feet front, on one of the principal business streets of the city of Warsaw. In addition to the hotel, there is a stable adjoining, which is a part of the premises in which the plaintiff has an undivided half interest. The defendant admits that from the stable he received in rents from January 22, 1877, to March 1, 1888, some $1,250; that for the house and furniture, and for the good-will of the house, etc., he received from August 1, 1877, to January 29, 1885, the sum of $8,665; making a total of $9,915, according to his own showing. The defendant occupied the hotel himself from January 22, 1877, to August 1, 1877,—seven months. He was also in the possession of the property from January 30, 1885, to June 15, 1885, the date at which the judgment in ejectment was rendered in this court. From that time he has been in the exclusive occupancy of the premises. The description of the furniture, as it appears in the depositions of Mr. George W. Green, Mrs. Jennie Reed, and Mr. and Mrs. Newberger, indicates that it was inferior in quality, and of no great value. The record shows that the defendant himself bought it at a chattel mortgage foreclosure sale in 1876 for $900, which was probably all it was worth. Mr. Green, who rented the hotel and furniture from August 1, 1877, to October 1, 1881, for $90 per month, after speaking of the character and condition of the furniture, says it was not worth over $500, and that the fair rental value of it was from $30 to $35 a month, which certainly is a fair and liberal estimate. Mrs. Jennie Reed rented the hotel from October 3, 1881, to May 3, 1882. She was to pay $1,000 for the hotel and $500 per year for the fur-

niture. At that time she says that Chapman only wanted to sell the entire furniture for $600 or $700. He finally asked her if she would give $500 for it. She says she told him she would give $300 a year for it, but she does not think it worth over $50 a year rental. Mr. and Mrs. Newberger rented the house from May 3, 1882, to January 30, 1885. They were to pay $1,000 per year and $500 for the furniture. Mr. Newberger says that Chapman would not rent the hotel unless he agreed to take the furniture. He also says that the fair cash value of the furniture at that time would not exceed $250, and that $50 a year would be full rental value for it. Mrs. Newberger says the furniture was not worth over $300. The effect of this evidence is to show that in dealing with this property Mr. Chapman was taking much better care of his interests in what belonged to him exclusively than he was of the joint property which was owned by himself and the plaintiff. In view of all the facts, I find and report that the defendant should be charged with the rental value of the hotel proper from January 27, 1877, to April 1, 1888, a period of eleven years, two months, and eight days. At the rate of $75 per month, this would amount to $10,070. I report and find that he should be disallowed for his claim for repairs put upon the property prior to 1877, which repairs amounted to the sum of $2,595. Taking this from the total repairs proved by him, which is $5,223.67, would leave a balance of repairs, for which he is entitled to a credit, of $2,628.67. In addition to this, the defendant Chapman paid taxes from time to time amounting to $1,175.37. This, added to the repairs for which he should be allowed, makes the total of credits in his favor, $3,804.04. Subtracting this amount from the $10,070 rentals, leaves a balance of rent for the hotel property, $6,265.96. He should account to the complainant for one-half of this, which is $3,132.98. In addition to the rentals from the hotel, Col. Chapman received $1,250 rent for the stable. Half of this amount, $625, should be added to the half of the hotel rentals, which makes the amount due Mrs. Davis on an accounting, allowing Col. Chapman for repairs and taxes as indicated above, the sum of $3,757.98. In this computation no account has been taken of interest either way. The master has preferred to take the short method of allowing the interest on repairs to offset interest on rents, without attempting to arrive at the exact figures by making monthly or annual rests. I report and find that out of the defendant's share of the proceeds of the sale of the real estate the complainant be allowed the sum of $3,757.98."

Both parties have excepted to the amount of this allowance, and to the calculations by which it was reached. The plaintiff demands rents from January 22, 1877, the date of her deed; and insists that the demands of the defendant for improvements and repairs, and for taxes paid before that date, are merged and extinguished in his title as sole owner of the entire property, acquired November 15, 1876, (or, if the doctrine of relation to the date of purchase be applied, November 15, 1875;) and that for the time since that date he should be allowed nothing, because wrongfully and in bad faith he had denied her rights in the property, had excluded her from possession, and had subjected her to the expense of vexatious litigation.

*J. M. Van Fleet* and *Hill & Lamb*, for complainant.

No case in the books, either at law or in equity, holds that a willful and perverse wrong-doer can recover or be allowed anything for improvements or any apportionment whatever for rents incurred by way of improvements. The counsel will cite none. Many cases can be found holding that where one tenant in common, supposing that he owned the whole, without notice of adverse claims, has been allowed in equity a deduction for the rents occasioned

by his improvements, as well as the present value of the improvements at the time of the trial. That doctrine of equity has been codified by the fourth subdivision of section 1076, Rev. St. 1881. This necessarily implies that one not within the statute shall be allowed no reductions whatever. *Carver* v. *Coffman*, (Ind.) 10 N. E. Rep. 567; *Mining Co.* v. *Sydnor*, 39 Wis. 600; *Vannoy* v. *Blessing*, 36 Ind. 349; *Woodhull*, v. *Rosenthal*, 61 N. Y. 382; *Patterson* v. *Brown*, 32 N. Y. 81; *Hilgenberg* v. *Rhodes*, 12 N. E. Rep. 149; *Osborn* v. *Storms*, 65 Ind. 325; *Ethel* v. *Batchelder*, 90 Ind. 525; *Walker* v. *Quigg*, 6 Watts, 87; *Shand* v. *Hanley*, 71 N. Y 319; *Haslett* v. *Crain*, 85 Ill. 129; *Davidson* v. *Thompson*, 22 N. J. Eq. 83; *Wilkinson* v. *Pearson*, 23 Pa. St. 117; *Austin* v. *Barrett*, 44 Iowa, 488, and cases cited.

*Harrison, Miller & Elam*, for defendant.

We insist that the only penalty the law inflicts upon the defendant for the denial of complainant's title is the costs of the litigation; that this question of an accounting can only arise between tenants in common, where one has excluded the other and taken sole possession; and that the fact that he denied his co-tenant's title, as well as his right to possession, does not in any degree influence the equitable principles upon which the accounting is to be made. We state these propositions, with some cases in support of them: *First.* For the time since the defendant invited the complainant to share the possession and occupancy with him, or to unite with him in leasing the property, she can recover no rents; the defendant having received none. *Second.* For the time when the property was occupied by defendant himself, under a claim of an exclusive right, the complainant might recover the one-half of the reasonable rental value of the property, if she had offered any evidence of the rental value; but she did not. The evidence is that it could not be rented, and was kept going by defendant at a loss. *Third.* At common law one tenant in common cannot recover of another for mere occupation at all; and by statute, when there has not been an actual exclusion, there can be a recovery only for actual receipts of money, etc. Our statute, section 228, simply takes place of statute of 16 Anne, c. 4. The language is the same. The word "received" is the same in both, and is adopted with a well-settled construction in England and America. *Fourth.* In the absence of evidence of rental value, the accounting must proceed by charging the defendant only with the money actually received by him for rents. *Fifth.* Against this he is entitled to be credited with the cost of such repairs and improvements as were necessary to the beneficial use of the property, and with any taxes paid by him. The complainant cannot receive the increased rental produced by the improvements, and refuse to share their cost. *Pickering* v. *Pickering*, (N H.) 3 Atl. Rep. 744, and cases cited; 1 Washb. Real Prop. 661, 662; *Pico* v. *Columbet*, 12 Cal. 414; *Ford* v. *Knapp*, (N. Y.) 6 N. E. Rep. 283; *Alexander* v. *Ellison*, 79 Ky. 148; *Tyner* v. *Fenner*, 4 Lea, 469; *Osborn* v. *Osborn*, 62 Tex. 495.

WOODS, J., (*after stating the facts as above.*) In respect to the title of the parties it is enough to restate briefly here, what is shown more at large in the report of the case at law; that in 1873 Chapman and Charles Ford were equal co-tenants of the property, and continued so until November 15, 1876, (erroneously stated "1875" at page 75 of the report,) when by force of certain judicial sales, the title of Ford was transferred to Chapman, terminating the previous co-tenancy and making Chapman the sole owner of the property, subject to the mortgage of July 2, 1875, made by Ford upon his half interest to Nelson Davis, upon foreclosure of which Mrs. Davis purchased, January 22, 1876, and on January 22,

1877, on default of redemption by Chapman or any other, received the sheriff's deed of that date, whereby she became and has continued to be co-tenant with the defendant, but without recognition by him of her rights, until since the date of the judgment in the case at law.    The important question arises here, whether, for the purpose of the accounting between the parties, this co-tenancy shall be regarded as beginning with the execution of the deed to the plaintiff, or by relation shall be carried back to the date of the mortgage, or at least to the date of the sale made upon foreclosure of the mortgage, from which the plaintiff's title is derived. The plaintiff claimed and has been allowed nothing for rent before the date of her deed; but the defendant insists upon bringing into the account his expenditures for repairs and taxes before that time, including the taxes of 1873–74, for which the defendant purchased the property at the tax sale of February, 1875.    Rejecting the charges for repairs, the master allowed those for taxes paid, but by mistake treated the amounts allowed as having been paid upon the entire property, instead of the half, as was the fact.

In support of the defendant's claim in this respect, his counsel contend that by force of the doctrine of relation the co-tenancy of the parties should be deemed to have commenced, if not with the execution of the mortgage, at latest on the day of the sale to the plaintiff on the decree of foreclosure of the mortgage.    This proposition seems to me inadmissible. Without doubt the title of a purchaser at judicial sale relates to the date of sale, and, if the sale be upon foreclosure of a mortgage, to the date of the mortgage; but does it follow, upon the sale of an undivided interest, that the co-tenancy consummated by the conveyance must also be deemed, like the title, to commence with "the original" of the "divers acts concurrent to make the conveyance?"    If so, then Mrs. Davis and Chapman must be held to have been co-tenants since July 2, 1875, (for the relation goes as certainly to the date of the mortgage as of the sale,) notwithstanding both in law and fact she actually had neither title nor right of possession until she received her deed, and until November, 1875, Ford, in common with Chapman, had the title and the right of possession, to her exclusion.    To apply the doctrine of relation to these facts in the manner proposed, might be characterized as an attempt to "make that not to have been which was," as well as to make that to have been which never was, and which, by the will of either party, without the consent of the other at the time, or even by the will of both parties without the consent of Ford, could not have been.    But if the co-tenancy during this time or any part of the time were conceded, still, in order to hold Chapman accountable to Mrs. Davis for the use or occupation of the property during such time, (as a substantive and direct cause of action,) it would be necessary to add to the fiction of co-tenancy the further assumption of an ouster, or wrongful denial of the right of the plaintiff in the premises by the defendant.    But it is a recognized limitation upon the doctrine of relation that it shall not be applied in such way as to make that tortious which, when done, was lawful.    3 Washb. Real Prop. 277.    *Frost* v. *Beekman,* 1 Johns. Ch. 297.    The only precedent claimed

for the proposed application of the doctrine is the case of *Ford* v. *Knapp*, 6 N. E. Rep. 283. In that case the owners of an undivided half interest in a mill bought at execution sale the other half, and, being in possession, proceeded during the period of 15 months allowed by the law of New York for redemption from such sales to make necessary repairs and alterations; but before the end of that period creditors of the execution debtor redeemed from the sale, and, having acquired the title of the debtor, sued for partition; and, in determining whether there should be compensation for the repairs so made out of the proceeds of the sale of the mill ordered in the suit for partition, the court held that "by relation, and through their redemption," the creditors became "vested with the right of the debtor from the date of the sale, and thereby tenants in common with the defendants from that date, by relation, or vested with the rights of such a co-tenant." It will be seen, on reference to the opinion, that the court put out of view as immaterial the execution sale, which, it is to be observed, never ripened into a conveyance, and decided the case as if it had arisen between the original co-tenants, whose relation as such had remained undisturbed. The case would have been very different, and essentially like this one, if, no redemption from the execution sale having been effected, the purchasers had become the sole owners of the property, and afterwards, by the enforcement of some paramount lien, had lost the half interest so acquired, and, in a suit for partition thereafter brought, had sought compensation for repairs made during or before the time of their sole ownership. So, too, on the record presented here, if the mortgage to Davis had not been made, or no foreclosure or sale had been had under it, and if Ford or any creditor of Ford had redeemed from the sales to Chapman, and then sought partition, and Chapman in that proceeding had brought forward his claim for repairs made before such redemption, the question would have been the same as in the case cited, but manifestly and broadly different from the question presented upon the facts as they are in this case. By making repairs and improvements the defendant certainly acquired no lien upon the property itself, and without such lien there seems to be no ground for enforcing his demand for compensation against the purchaser under the mortgage.

The court is of the opinion that the accounting should embrace no charge on either side for matter which occurred before January 22, 1877; and, as this includes taxes accrued before that time, the error of the master in that respect is reduced to $212.43.

The finding of the master in respect to the monthly rental value of the hotel is sufficiently well supported by the proof of prices obtained by the defendant of lessees of the property, and in some measure by other evidence; and if for any part of the time this estimate could be deemed high, the overcharge has been well compensated by the master's disposition of the subject of interest, which, computed in the ordinary way, would have added a considerable sum to the amount of the finding.

The proposition that at common law one tenant in common cannot recover of another for mere occupation is recognized, and, under the maxim that equity follows the law, I suppose the plaintiff ought not in this ac-

tion to recover anything for such mere use or occupation by the defendant; that is to say, for the time after August, 1885, when, the action at law having been decided, the defendant acknowledged the plaintiff's title and invited her to share in the possession and management of the property. But while such use and occupation may not be made the direct ground of recovery, it does not follow that it may not be considered in connection with, and made an equitable set-off against, the defendant's claim for repairs, which, at common law, in the absence of agreement, are likewise not the subject of an action between co-tenants. The same principle which admits one of these claims into the computation opens the door to the other as a set-off against the first. The case of *Hyatt* v. *Cochran*, 85 Ind. 231, affords a close analogy. That was an action for rents and profits of real estate under a statute which permitted a recovery for six years only The defendant claimed an allowance for repairs, and the plaintiff was permitted to bring forward in set-off a demand for rents accrued more than six years before the commencement of the action.

The attitude and conduct of the defendant in the case have shown him throughout a determined and persistent litigant, and the result has shown him to have been in the wrong; but in the judgment of the court, if the subject of *bona fides* be within the scope of the present inquiry, there is not such proof of bad faith on the part of the defendant as to exclude his claims from all equitable cognizance. Upon a careful consideration of the case in all its aspects, as presented by counsel, the court is not able to discover a basis of adjustment different from that adopted by the master, which it could regard as more consonant with equity and good conscience; and the amount reported, reduced by $212.43, that is to say, $3,545.55, to be paid by defendant to complainant, is confirmed, and all exceptions to the report inconsistent with this conclusion are overruled. Decree and judgment accordingly.