N. E. BROWN AND SUSAN BROWN, Appellants, v. W. S. COOPER AND THE ANCHOR MILL COMPANY.

**Partition:** WATERS. The appointment of an inspector or supervisor, to divide water, keep up weirs, and otherwise oversee the property, for the joint benefit of the owners, is beyond the power of the court, in a suit for partition of a water power, and if partition in kind cannot be made without this, the property should be sold. *Cooper v Water Power Co.*, 42 Iowa, 398, limited.

CO-TENANTS. Part owners of a water power cannot be compelled to contribute to the building of weirs, at a large expense, in order to apportion the water, or of improvements not in the nature of repairs, but made to raise the level of the water to facilitate its apportionment.

R S ADJUDICATA: *Interlocutory order*. In a partition, the court entered a decree on the pleadings, confirming the shares of the respective parties in the property, and decreed that each was liable to contribute his proportionate part of the expense of maintaining the property, and that plaintiff was entitled to have the property (water power) partitioned, so that each owner should receive his proper share, and no more, of the water and water power at all times, and appoint referees to make partition. *Held*, that the decree was interlocutory, and not conclusive as to whether the partition should be made in kind, or the property be sold and the proceeds divided, even though it was consented to.

**Appeal:** FINAL DECISION. An order directing the construction of weirs for the partition of water, and for improvements by raising the level of the water to facilitate partition in kind, involves the merits of a controversy for the partition of a water power, so that an appeal therefrom may be had although the final decision has not been passed.

NOTE.—On the division of water between opposite riparian owners, see also *Warren v. Westbrook Mfg. Co.* (Me.) 26 L. R. A. 284, and *note*.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

## FRIDAY, MAY 22, 1896.

THIS is a proceeeding to partition a water power on the Cedar river, at the city of Cedar Rapids, consisting of a dam, bulkheads, race-ways, retaining walls, pond, etc. From an order of the district court setting aside the report of the referees, recommending a sale of the power, because it could not be divided, and from another order confirming the report of subsequent referees, recommending a partition and the expenditure of large sums of money, in order to accomplish the setting aside of shares to the respective parties, and from a still further order, directing certain repairs and improvements to be made of the property. N. E. Brown and Susan Brown appeal.—*Reversed.*

*M. P. Smith* for appellants.

Partition takes place when two or more joint tenants, co-parceners, or tenants in common agree to divide the land so held among them in severalty, each taking his distinct part.

2 Bl. Com. 324.

Joint tenants may also sever the tenancy voluntarily by deed, or they may compel a partition by writ of partition.

4 Kent, Com. p. 379.

Co-tenants, no longer content to enjoy their property in moities, may, if it be susceptible of division, have it transformed into estates in severalty, and one of such estates assigned to each of the former occupants for his sole use, and as his sole property.

Freem, Co-tenancy & Partition, section 393.

Neither this, nor any other court, has ever held that a water power, owned in common by three or more persons, whose interests were varied, could be divided so that each would receive his share of the flow of the water.

*Cooper v. Cedar Rapids Water Power Co.*, 42 Iowa, 398; *Doan v. Metcalf*, 46 Iowa, 120; *Smith v. Smith*, 10 Paige, 470.

A division of water that is variable in its flow is an impossibility.

*McGillivray v. Evans*, 27 Cal. 93; *Higginbottom v. Short*, 25 Miss. 160, 57 Am. Dec. 198; *Hartmann v. Hartmann*, 59 Ill. 103; *Royston v. Royston*, 13 Ga. 425; Freem. Co-tenancy and Partition, section 536; *Lenfers v. Henke*, 73 Ill. 405 (24 Am. Rep. 263).

There should not be an attempted division of the water when such a thing is practically impossible.

*Field v. Leiter*, 117 Ill. 341; *White v. Story*, 2 Hill, 549; *Crowell v. Woodbury*, 52 N. H. 613.

When such is the case a sale should be ordered instead of an attempted division.

Freem. Co-tenancy and Partition, section 536; *Higginbottom v. Short, supra; Dyer v. Lowell*, 30 Me. 217; *Field v. Leiter, supra.*

The commissioners have no other duty to perform or authoriry to act, than to divide the estate according to the directions contained in the warrant.

Freem. Co-tenancy and Partition, section 522; *Brown v. Bulkley*, 11 Cush. 168; *Field v. Leiter, supra.*

The district court held it to be the subject of partition (against appellee's contention), which left the only remaining question of the method of division. When the questions presented by this appeal are decided, whatever is left is simply mechanical, the controversy between the parties is ended.

*Johnson v. Butler*, 1 Iowa, 459; *Iowa College Trustees v. Davenport*, 7 Iowa, 213; *Callanan v. Shaw*, 19

Iowa, 183; *Burnham v. Thompson*, 35 Iowa, 421; *Brown v. Harper*, 54 Iowa, 546; *Sunberg v. Linn County Dist. Ct.*, 61 Iowa, 597; *First Nat. Bank v. Gill*, 50 Iowa, 425; *Bicklin v. Kendall*, 72 Iowa, 490.

*Mason P. Mills* for appellee.

DEEMER, J.—At the time of the commencement of this action, Susan Brown owned fifty-seven sixty-fourths, N. E. Brown, two sixty-fourths, W. S. Cooper, four sixty-fourths, and the Anchor Mill Company, one sixty-fourth of the dam, and water power referred to in the above statement of the case. The appellants are mother and son, and their interests are united. They commenced this action to partition the water power among the respective owners, and asked that the shares of each be established and confirmed, and that referees be appointed to make partition, or, if it is apparent that the same cannot be equitably divided, then that a sale of the property and a division of the proceeds be made between the parties according to their respective interests. The defendants answered, pleading their interests in the property. They each objected to a sale, and asked that the property be repaired, and that the share of water belonging to them be delivered. On the first day of November, 1889, the court, on these pleadings, entered an interlocutory decree, establishing and confirming the shares of the respective parties in and to the property, and decreed that each was liable to contribute at all times, in proportion to his respective interest, to the expense of maintaining the property in good condition; that the plaintiff was entitled to have the water power and property partitioned and admeasured, so that each owner should receive his proper share, and no more, of the water and water power, and no more at any and all stages of water, and in whatsoever

condition said power or improvements may be.
The court also appointed James Emmerson, of Wil-
liamette, Mass., Samuel Sherwood, of Independence,
Iowa, and P. Mullaly, of Cedar Rapids, Iowa, referees,
to make partition; directed them to set apart the
respective interests and shares of the parties; ordered
them to make such recommendations for further
maintenance and use of the interests of the parties as
they might deem advisable; and continued the action
for further proceedings. Afterwards, a change was
made in the personnel of the referees, and Clemens
Herschel, of New York City, a hydraulic engineer,
Prof. Williams, of Mt. Vernon, Iowa, a civil engineer,
and Samuel Sherwood, of Independence, Iowa, a
practical miller, were substituted in place of
the referees originally appointed. On the twenty-
seventh day of January these referees reported, that
an actual partition or division of the property into
the required fractional parts, was impracticable, with-
out an indefinitely continuing, intelligent operation
and supervision of the appliances that might be
erected, and that if such supervision was had, the
attendant expense and difficulties involved, would
render such method inadvisable and inexpedient;
that it would materially injure and diminish the
rights of some of the owners of the property; and
that, in their judgment, a sale of the property and a
division of the proceeds, was the only practical method
of partition. The appellees, Cooper and the Anchor
Mill Company, filed objections to this report, and
moved to set it aside; and the other parties moved to
confirm the same, and for an order for the sale of the
property. The motion to confirm was overruled, and
appellees' objections to the report were sustained,
and the Browns excepted to these rulings. After-
ward, J. T. Fanning, W. Y. Clark and A. H. Conner,
were appointed referees, to make partition in kind,

and on the twenty-fifth of October, 1893, they filed their report, proposing a plan and recommendation for partition. They recommended the erection of adjustable measuring weirs, to be made permanent and adjustable, so as to measure out to each owner the share of water to which he was entitled. The expense of such an erection they estimated at eight thousand dollars. They also recommended that the court direct the owners of the property to employ a competent inspector of the weirs, who should, as often as necessary, see that they were kept in proper adjustment and repair, and that they did in fact partition the water in proper proportion at all stages of ready available flow of the river. They also found that the dam was not then in good condition, and that partitioning the flow under such conditions would not be warranted, without the expenditure of large sums of money for repairing and bettering the condition of the property. They therefore recommended that the crest of the dam be raised, that the dam itself should be strengthened and made permanently stable in its present position; that it should be made water-tight, and that leakage in the head-races should be stopped. The estimated cost of making the repairs and improvements suggested by the referees is from seven thousand dollars to twelve thousand dollars. Upon the coming in of this report, the plaintiffs moved to set the same aside, and for an order directing the referees to proceed with a sale of the property and a division of the proceeds thereof, or that the cause be referred to other referees for final disposition. The defendants filed an application for an order directing the repairs of the property in accord with the recommendations of the referees. The plaintiffs filed a resistance to this last-named application. The motion of plaintiffs to set aside, and the application of defendants for an order to repair, were submitted to the court, and the

former was overruled, and the report of the commissioners approved, and the application for an order directing the repairs was in effect sustained. To each and all of these rulings the plaintiffs excepted.. They now appeal to this court, and in their arguments question the validity of all the orders and rulings made by the district court. They complain more particularly of the order for the construction of the weirs and gates, and for the appointment of an inspector, and strenuously insist that the court had no power to make the order for repairing and improving the dam.

Before proceeding to a discussion of the questions presented, it is perhaps advisable to state some of the facts a little more explicitly. It appears that N. E. Brown owns a lot on the east side of the river, on which stands a mill. Susan Brown owns a lot adjoining that of her co-plaintiff, and also lots on the west side of the river adjoining the race-way. The defendants, Cooper and the Anchor Mill Company, each own lots on the east side of the river, on which their mills are situated; Cooper's being furthest north, or up stream, and the mill company's furthest south, or down stream. It further appears that the share of water owned by Cooper or the mill company is not sufficient to run either of their mills, and for many years they have been using largely of the water belonging to appellants. The dam and bulkheads have been standing for many years, and the mills are all old. The rise and fall of the water in the Cedar river is quite variable, the volume ranging from six hundred and forty to one thousand two hundred and eighty cubic feet per second. The referees first appointed found, among other things, that partition of the property in kind was "not practically possible, without an indefinitely continuing intelligent operation and supervision of the appliances that might be erected, conducted, morover, in a judicial

spirit." The referees last appointed made practically the same finding, for they recommended the appointment of a superintendent or inspector to control the apparatus, and measure out to each owner his share of the water. We may now proceed to a consideration of the various questions presented by the record. It is to be observed that the appellants do not question that partition of a water power may be had in a proper case. Indeed, they are not in position to make any such claim, for they instituted the action, and are now insisting that partition be made. Moreover, the question was put at rest, so far as this court is concerned, by the case of *Cooper v. Water Power Co.*, 42 Iowa, 398, which involved a partition of the very water power we are now considering. Their contention is that, under the showing made in this case, partition cannot be made in kind, but must be brought about by a sale and division of the proceeds. They further claim, that, if partition could be made in kind, the orders and decree of the court in this case, in so far as it directed the repair and improvement of the property, the building of the weirs, and the appointment of a supervisor or inspector, are erroneous, and should be reversed.

At the threshhold of the case, we are met by a claim from appellees' counsel that we cannot consider the points made by appellants, for the reason that the original decree rendered in the case is an adjudication that partition could be made of the property in kind, and that appellants are not, for that reason, in position to complain. This original decree, as we have said, was an interlocutory one. It established and confirmed the respective interests of the parties in and to the property, and appointed referees to make partition. The referees first appointed, reported that they could not do so in kind, and they recommended the sale of the property. This report

was set aside, and new referees appointed. They made a report recommending partition, as heretofore stated. This last report was approved, and the referees were directed to construct the weirs, and make the improvements and repairs of the property as recommended by them. We do not think that the original decree, although it seems to have been consented to by appellants, is conclusive of the question as to how the partition should be made; that is to say, whether it should be made in kind, or the property sold, and the proceeds divided. It certainly is not true that partition should be made in kind, under this decree, if the referees appointed discovered, upon investigation, that it could not be done. It seems to us, that the finding was no more than the ordinary interlocutory decree in such cases, establishing and confirming the interests of the various parties, and appointing the referees to make partition. Whether it should be made in kind, or the property sold, and the proceeds divided, was left for decision after the referees had made their report as to the practicability of a partition in kind. Certain it is, that if the referees had found it entirely impracticable to divide the property among the several owners, the court was not bound hand and foot by the original decree. In such a case, it would have ordered the referees to make a sale and divide the proceeds. Of this, it seems to us, there can be no question. But, if we are wrong in this, it does not follow that the order of the court, directing the repairs of the property, the building of weirs, and the appointment of an inspector, can be sustained. The original decree did not provide for any such thing, and the question as to whether or not these things should be done, did not arise until the referees reported, recommending them.

Appellees further contend that there has as yet been no order from which plaintiffs may appeal. It is

said that "none of the questions involved the merits of the case, or affect the final decision, because the first two are only the suggestions of the referees as to what should be done, and the third in no manner affects the final decision, for the reason that the order was proper, in order to save the balance of the property sought to be partitioned." In this we think the appellees are in error. It is true the final decision has not yet been passed. But the court did direct the construction of the weirs, which will cost in the neighborhood of eight thousand dollars, and further directed that the property be repaired and improved at an estimated expense of from seven thousand to twelve thousand dollars, preliminary to the final decree in the case. Manifestly, these orders materially affected the final decision and involved the merits of the controversy. The ruling of the court was, in effect, a holding that the property could be partitioned in kind, and that a sale should not be had. This was really the only question in the case. All else was largely ministerial or administrative. As sustaining our conclusions, see *Burnham v. Thompson*, 35 Iowa, 421, and *Brown v. Harper*, 54 Iowa, 546 (6 N. W. Rep. 747).

It is further argued on behalf of appellees, that defendants cannot complain of the order of the court setting aside the report made by the referees first appointed, for the reason that no appeal was taken therefrom within the six months required by law. We do not think a decision of this question is necessary to a disposition of the case, and therefore will not consider it.

The controlling point in the case is the correctness of the ruling approving the report of the referees last appointed, the direction given them to make repairs and incur the expense necessary to make the partition effective, and the refusal of the court to

order the sale of the property. It has already been noticed that the referees and the court found it necessary to involve the parties in an expense of more than sixteen thousand dollars before partition of the property could be made. The referees also found that, after making this expense, the partition would not be effective without the personal supervision of some overseer, who should equalize the flow of the water, and direct it into proper channels, and so divide it that each one of the parties in interest should receive his proper share. This report, with a recommendation of such a person, was fully approved by the court. We are clearly of the opinion that these orders and rulings of the court, made upon the recommendation of the referees, cannot be sustained.

The object of partition proceedings is to enable those who own property as joint tenants, or co-parceners, or tenants in common to so put an end to the tenancy as to vest in each a sole estate in specific property or an allotment of the lands or tenements. It contemplates an absolute severance of the individual interests of each joint owner, and, after partition, each has the right to enjoy his estate without supervision, let, or hindrance from the other. Unless this can be accomplished, then the joint estate ought to be sold, and the proceeds divided. Courts should be, and are, adverse to any rule which will compel unwilling persons to use ·their property in common. Now, it seems to be practically conceded by all parties that, to make partition in kind effective in this case, there must be an inspector or supervisor appointed, whose duty it will be to divide the water, keep up the weirs, and otherwise oversee the property for the joint benefit of the owners thereof. It seems to us that this is not a partition of property, and that, when such an appointment is required in order that

each owner may receive his proportion of the water, from this fact alone it is apparent that a sale should be made. By what authority, we inquire, could such an inspector make improvements of the property for the benefit of the owners thereof if they owned it in severalty? What right would such an inspector have to go upon the property of one for the benefit of another after partition in kind should be made? By what authority could he make repairs, and charge the expense thereof, or any part thereof, to the one not consenting thereto? It seems to us that an order contemplating such a procedure is not a partition at all. It is nothing more than the appointment of an agent to divide the water and to see that each of the joint owners gets his proper share thereof. It is simply taking the management of the property out of the hands of the joint owners and placing it in charge of an officer of court. No allotment is made of an aliquot part of the estate to any one. In the case of *Cooper v. Water Power Co.*, *supra*, we said: "The rules governing the partition should be certain, definite and self-adjusting, so they will readily apply to the future state and condition of the power." On account of the variable flow of water in the Cedar river, it is perfectly clear that no partition could be made which would "readily apply to the future state and condition of the power." It seems to be agreed by all the experts, who have had anything to do with the case, that division of the property is not practicable "without an indefinitely continuing, intelligent operation of the appliances that might be erected." The case of *McGillivray v. Evans*, 27 Cal. 93, is closely in point on this proposition. The court there, in speaking of much such a case as we have here, said: "The only partition that the court can make, which will definitely and permanently end the dispute of the parties, and do justice between them, is to order a sale and

distribute the proceeds." Again, the court said: "An attempt to do it [divide the water], would be, not to end, but to encourage and multiply litigation to an unlimited extent." See also, *Higginbottom v. Short* (57 Am. Dec. 198).

The most serious objection to the order of the court, is the direction therein given to the referees to expend more than eight thousand dollars in the repairs of the property, and almost an equal sum in the construction of weirs, etc., in order to partially effectuate the partition, and this against the express wishes and desires of the owners of the larger part of the property. It cannot be that one may thus be compelled, against his express wishes and desires, to pay for improving his property for the benefit of his neighbor. Such an order is an infraction of the rights and principles which are guarantied to us by our form of government. It is a blow at the liberty of the individual, and does not comport with our ideas of the rights of property. Why should the property of appellants be taken in order that certain advantages may flow to the appellees? Can one be made the debtor of another, without his consent, express or implied?

It is argued by appellees, however, that as one joint tenant or tenant in common may make repairs and charge a proportionate amount of the expense thereof against a co-tenant, the order of the court, in this case, is proper and legal. The fallacy of this argument is exposed, however, when we consider that the building of the weir was not a repair of the property. It was in the nature of a permanent improvement, twelve-thirteenths of the expense of which must be born by the appellants in order that appellees may enjoy one-thirteenth of the water power. We do not think it is the law that one co-tenant may make improvements upon the common property,

and charge the expense, or any part thereof, to his co-tenant. See Freem. Co-ten., section 262. That he may make needed repairs in some cases, and charge a proportionate part of the expense thereof to his co-tenant, may be conceded; but such is not this case. We do not think there was any authority in the court to authorize the expenditure of eight thousand dollars in the building of the weirs in order to effectuate the partition. The case of *Field v. Leiter*, 117 Ill. 341 (7 N. E. Rep. 279), is strongly in point on this proposition, and the reasoning of the court in that case is quite conclusive of the proposition here considered. See, also *Dyer v. Lowell*, 30 Me. 217. We need not decide whether the court may not, in any case of partition, direct the referees to make needed repairs of the property sought to be divided. It is enough to say here, that it quite clearly appears that the repairs were directed, not for the purpose of saving or caring for the property, but in order to accomplish the partition,—to raise the level of the water so that each of the parties might be given his proportionate share thereof. We are satisfied that such an order is without authority of law.

Our consideration of the case leads us to the conclusion that this is not a case where there can be a fair division of the property in kind. The only way in which partition can be made is to sell the property and divide the proceeds. On account of the condition of the property, the inconsiderable interest of the appellees therein as compared with that held by appellants, the variability of the flow of water in the river, and other matters not necessary to be enumerated, it seems to us that partition by allotment in kind is absolutely impracticable. What we have said is not in conflict with the case of *Cooper v. Water Power Co.*, *supra*. We have held that there may be partition, but we think it must be accomplished by a sale rather

than a division of the estate. True, there are some suggestions made in the case just cited as to how partition may be accomplished, but the record in this case shows conclusively that it is impossible to make partition by following the methods there pointed out. These suggestions are not binding upon us, for they are no part of the law of the case. For the reasons pointed out, the judgment of the district court is REVERSED.