W. S. COOPER and the ANCHOR MILL CO., Appellees, v. SUSAN BROWN, Appellant.

W. S. COOPER and the ANCHOR MILL CO., Appellees, v. N. E. BROWN, Appellant.

W. S. COOPER, Appellee, v. N. E. BROWN, MARY L. BROWN and SUSAN BROWN, Appellants.

Tenants in common: REPAIR OF COMMON PROPERTY: CONTRIBUTION:
1 NOTICE: EVIDENCE. Before one co-tenant, who has not consented thereto, can be compelled to contribute to the expense of improvement and repair of the common property, it must appear that the same were necessary and that he had notice of the proposed work and an opportunity to join therein; and a promise to contribute will not be implied from the mere making of the repairs or their utility or necessity. Nor will he be estopped to deny liability for such repairs by mere failure to object thereto,

when made without notice or demand to unite therein. Evidence held insufficient to show such demand or notice, or to pay any part of the expense after the work was completed.

**Same.** A co-tenant cannot be compelled to contribute to the repair of common property simply because he knew that the expense was being incurred and made no objection thereto.

**Co-tenants:** REPAIR OF COMMON PROPERTY: MECHANICS LIENS. To support a mechanics lien there must be a contract, express or implied; so that one co-tenant cannot proceed independently to repair the common property and assert a mechanics' lien thereon for the expense. Besides it is as much the duty of one co-tenant as of another to protect the property against liens by which the title may be lost.

**Same:** PARTITION: *Res Adjudicata.* A final adjudication is conclusive of all matters directly in issue or necessarily involved therein. The parties in this action were tenants in common of a water power and dam, and in a prior action for partition a decree was entered confirming the shares of each and ordering *pro rata* contribution by each toward the expense of maintaining the property, and decreeing partition to insure to each tenant his proper share of the power. On appeal the decree was reversed with direction that the partition be by sale of the property. Pending the appeal a portion of the dam was washed away and without consent or notice to defendant plaintiffs repaired the same and brought this action to compel contribution. *Held,* that the court having obtained jurisdiction for the purpose of partition, the rights of the parties are to be determined by a sale of the property for that purpose the same as though it had been originally so ordered by the trial court, and that the right to partition and sale having been established, the power to rebuild the dam and compel contribution to the expense was precluded thereby.

*Appeals from Linn District Court.*—HON. F. O. ELLISON, Judge.

FRIDAY, JULY 2, 1909.

THE nature of the controversy and the material facts are stated in the opinion.—*Reversed.*

*Dawley & Wheeler,* for appellants.

*J. H. Preston* and *Jamison & Smyth,* for appellees.

WEAVER, J.—More than twenty years ago Susan Brown and her son, N. E. Brown, each being part owner of a milldam and water power at Cedar Rapids, Iowa, in which property the present plaintiffs also owned fractional interests, commenced an action in equity for partition thereof. On August 27, 1889, an interlocutory decree was entered fixing their respective shares. These shares, so far as the present controversy is concerned, may be stated to have been as follows: Susan Brown, fifty-seven sixty-fourths; N. E. Brown, two sixty-fourths; W. S. Cooper, four sixty-fourths; and the Anchor Mill Company, one sixty-fourth. Said interlocutory decree also recites that the several parties are, in the same proportion, liable to contribute, erect and maintain the property in good condition. It was also provided that the water power and property should be so partitioned and admeasured that each owner should receive his proper share, and no more, of the water and power, and referees were appointed to set apart the respective shares and interests of the several owners. These referees reported that there was no practical scheme or plan upon which an actual partition in kind could be accomplished, and they advised a sale of the property, and partition of the proceeds. Cooper and the Anchor Mill Company objected to the report of the referees, and moved to set it aside, while the Browns asked its confirmation, and a decree according thereto. The district court sustained the objections, and set aside the report, and other referees were commissioned to make the partition. They reported a plan therefor which required the erection of adjustable weirs, the repair of the dam, an increase in its height, and the employment of an inspector, who should see that the weirs were kept in proper adjustment and operation. The objections of the Browns to this report being overruled, it was confirmed,

and an order entered for making the repairs and changes suggested. On appeal to this court this judgment was reversed, with the conclusion that the partition "must be accomplished by a sale rather than a division of the estate." *Brown v. Cooper,* 98 Iowa, 444. On March 4, 1894, and while the foregoing appeal was still pending and undetermined, a section of the dam about one hundred and fifty-two feet in length, in the middle of the river, was washed out, and an additional section of one hundred feet was so loosened and injured that to restore the property to its former condition required a rebuilding of two hundred and fifty-two feet of the structure. Three days later Susan Brown conveyed her interest in the property to Mary L. Brown, wife of N. E. Brown, by warranty deed, but this conveyance was not recorded until the year 1899. On May 3, 1894, still pending the appeal aforesaid, Cooper and the Anchor Mill Company made application to the district court in the partition proceedings, reciting that the dam had been so washed away that the water power could not be utilized, and asked an order directing the referees to rebuild or replace the section of the dam which had been destroyed, and that the expense thus incurred be taxed as costs in the case, and paid by the several owners of the property in proportion to their respective interests. The Browns resisted the application, but their objections were overruled, and the order entered as prayed. While it does not clearly appear from the record, it is inferrable at least that an appeal was taken from this order, and that its reversal is involved in the opinion of *Brown v. Cooper, supra.* It is not specifically discussed in the opinion, but the statement of the case there made recites that an appeal was taken from the decree or order for partition in kind, "and from a still further order directing certain repairs and improvements to be made" (which further order we assume to be the one we are here discussing), and as the reversal of the judgment of the dis-

trict court is ordered in general terms, it works a reversal of the order or judgment for a restoration of the dam by the referees at the expense of all the parties. But plaintiffs herein are claiming no right or benefit under said order, and the question of its reversal is perhaps not very material. After the cause was remanded from this court to the district court, a decree was entered providing for the sale of the property and division of the proceeds; but, so far as appears from the record, no sale had been made at the date of the commencement of the present actions.

On September 22, 1898, the plaintiffs herein instituted separate actions at law against Susan Brown and N. E. Brown, alleging in each the washing away of the milldam as aforesaid, that defendants refused or neglected to restore the same, as was necessary in order to have any valuable use of the property, and that plaintiffs had thereby been compelled to furnish the materials and do the work at their own expense, wherefore they ask a recovery from the defendants severally in amounts proportioned to their respective interests in the title. The amount claimed against Susan Brown is $3,551.11, with interest from October 1, 1894, and of N. E. Brown $124.60, with like interest. On January 8, 1902, these actions being pending, the plaintiff W. S. Cooper instituted another action in equity against Susan Brown, Mary L. Brown, and N. E. Brown, alleging that, in order to have the beneficial use of the water power, it became necessary to repair the head gates and raceway, and that, being notified thereof, and requested to unite in making said repairs, defendants failed to do so, from which facts it is alleged there arose an implied contract on the part of the defendants to pay to said plaintiff their proportion of the expense of such necessary repairs as plaintiff should make upon said head gates and raceway. He alleges that he has in fact thus incurred large expense, the defendants' share of which is unpaid, and he claims a mechanic's lien therefor on de-

fendants' interest in the common property, which lien he asks to have foreclosed.

The pleadings set out in the abstract are numerous, but we think a sufficiently comprehensive idea of the issues may be obtained when we say that to each of the actions above mentioned the defendants appear, and deny plaintiffs' right to any recovery, or to any equitable relief. They deny that the expense incurred in restoring the dam was paid by plaintiffs, but say it was paid by the voluntary subscriptions of other persons, because of incidental benefits accruing to themselves by the maintenance of the dam. They also pleaded the decision of this court in *Brown v. Cooper, supra,* as a prior adjudication adverse to the claims of the plaintiffs. Susan Brown, for herself, denies that at the time when plaintiffs claim to have incurred expense in rebuilding the dam, she had any interest in the property, and is in no manner liable to contribute thereto. Defendants also set up a counterclaim against plaintiffs, alleging a use of the water power by the latter in excess of their rightful share. Plaintiffs, replying, deny the counterclaim, allege a prior adjudication upholding their right to use the water without accounting therefor, and aver other reasons, which we need not here set out, why the defenses relied upon by the defendants can not be maintained. The trial court found the plaintiffs entitled to recover from Susan Brown the sum of $5,753, from N. E. Brown the sum of $201, and for said sums, with costs, judgment was entered. It also found the plaintiff Cooper entitled to recover from all the defendants, upon the equitable issue joined, the sum of $918, and that the claim for a mechanic's lien be established and enforced. From each of these adverse judgments and findings the defendants appeal. All the issues have been argued and submitted in this court upon the same records, and they will be disposed of by us in a single opinion.

I. Can plaintiffs enforce contribution from the Browns for repairs and improvements made by the former upon their

common property? It is to be remembered at the outset

**1. TENANTS IN COMMON: repair of common property: contribution: notice: evidence.** that the common interest of the parties includes nothing but the dam and water rights, and that the different mills operated by this power are owned by them in severalty. Speaking of repairs, as distinguished from improvements or betterments, of the common property, it seems to have been a general rule at common law that one tenant in common could not enforce contributions from a cotenant for expenses thus incurred without his consent. *Mumford v. Brown,* 6 Cow. (N. Y.) 475 (16 Am. Dec. 440); *Doane v. Badger,* 12 Mass. 65; *Taylor v. Baldwin,* 10 Barb. (N. Y.) 590; *Calvert v. Aldrich,* 99 Mass. 74 (96 Am. Dec. 693); *Converse v. Ferre,* 11 Mass. 325; *Kidder v. Rixford,* 16 Vt. 169 (42 Am. Dec. 504); *Davis v. Chapman* (C. C.), 36 Fed. 42; *Carver v. Miller,* 4 Mass. 559; *Stackable v. Stackable's Estate,* 65 Mich. 515 (32 N. W. 808); *Wiggin v. Wiggin,* 43 N. H. 561 (80 Am. Dec. 192); and see Mr. Freeman's note to *Ward v. Ward,* 52 Am. St. Rep. 934. The remedy at common law against a cotenant refusing to unite in making necessary repairs to common property was not in assumpsit for expenses incurred, but by a writ *de reparatione facienda,* sued out before the repairs were made, in which proceeding, upon proper showing of their necessity, an appropriate order or judgment was entered, requiring them to be made at the expense of all the tenants, each in his proper proportion. *Bowle's Case,* 10 Coke, 82b; *Leigh v. Dickinson,* 12 Q. B. 194; *Calvert v. Aldrich,* 99 Mass. 74 (96 Am. Dec. 693). Many of the more modern precedents indicate, however, that where repairs are unquestionably necessary for the preservation of the common property, one tenant, after notice and demand upon his cotenant, and refusal of the latter to join therein, may proceed to do the required work, and enforce contribution therefor. See cases already cited, and *Ward v. Ward's Heirs,* 40 W. Va. 611 (21 S. E. 746, 29 L. R. A. 449, 52 Am. St. Rep. 911); *Stevens v. Thompson,* 17 N. H.

103; *Benson v. Thompson*, 27 Me. 470 (36 Am. Dec. 617); *Green v. Putnam*, 1 Barb. (N. Y.) 500. This rule is usually hedged within quite narrow limits; and, in order to support such a claim, it is not enough to show that the repairs made or demanded are reasonable and proper, but it must further appear that they are necessary to the preservation of the common estate. Some courts say "absolutely necessary." *Devlin's Estate*, 5 Pa. Dist. R. 125; *Dech's Appeal*, 57 Pa. St. 472; *Leigh v. Dickinson*, 12 Q. B. Div. 60. Says Mr. Freeman, in the note above cited:

It must be remembered that, even at common law no co-tenant was under any general duty to repair, but only under obligation to make such repairs as the court having jurisdiction should deem to be necessary, and then only to make them under the direction of that court. While there are many cases in which the court of equity, or a court of law administering some remedy which it has power to administer upon equitable principles, may take into the consideration the fact that one of the parties has made necessary repairs, and may make an allowance therefor, and deduct it from a sum which is coming to the other party, we do not believe that any action or suit is maintainable by one co-tenant against another, either to recover damages arising from the failure of the defendant to join in necessary repairs, or to obtain personal judgment against him for moneys paid in making repairs, however necessary they may have been, in the absence of any agreement to join therein. . . . But there may be circumstances which warrant the inference of an implied agreement, as where the property was being used for the common benefit, and the repairs upon a sudden contingency became necessary, and some of the part owners were where they could not be consulted, and the failure to make the repairs at once would have subjected the property to great injury, and its owners to a loss or to a statutory penalty. . . . If there is any case in which a direct action may be maintained against a cotenant to recover a share of the expense of the repairs upon the common property, and to which he has not expressly or impliedly agreed to contribute, it is clear that it is

only where, before the making of the repairs, he has been requested to join therein, and has unjustifiably refused.

Speaking to the same point, the Illinois court has said that to maintain such an action the plaintiff "must show a request to unite in the reparations, and a refusal, as well as an actual expenditure, in making them." *Louvalle v. Menard,* 6 Ill. 39 (41 Am. Dec. 161). It has also been held that a promise by one cotenant to pay another for repairs or improvements upon the common property will not be implied from the mere making of them, or from their utility or necessity. Freeman's Note, *supra.* Nor can one tenant be estopped to deny liability for repairs by his mere failure to object thereto, where the co-tenant proceeds to make them without notice or demand upon him to unite therein. *Crest v. Jack,* 3 Watts (Pa.) 238 (27 Am. Dec. 353). Most of the cases cited by the appellees in support of their right of action recognize the necessity of notice and demand or request upon the co-tenant before he can be held for repairs made by another. In others the rights of the parties are governed by statute.

Applying this rule, we think the plaintiffs have clearly failed to make a case against the defendant Susan Brown; for, conceding for the present that she was a co-tenant at the time the dam was rebuilt, there is no evidence whatever of any notice to, or demand upon her by the plaintiffs to unite in that work, or to pay any part of such expense after the dam had been restored. The utmost of the testimony in this respect is the testimony of a son of the plaintiff Cooper that he had a talk with Mrs. Brown in which he told her of the necessity of rebuilding the dam, and says: "I told her we were going to have a meeting in ten days at our office to make arrangements about rebuilding the dam." To this information he further says that she made no definite response. It will be observed that the person who addressed the defendant was not one of the tenants in

common, and there is nothing to show by what authority he interviewed her. But conceding his authority to speak, what he said is in no sense of the word a request or demand that she join in making the repairs, or notice that upon her failure to do so her co-tenants would make them. She was informed that in ten days "we are going to have a meeting at our office [presumably the office at plaintiffs' mills] to make arrangements about rebuilding the dam." Defendant was under no obligation to go to plaintiffs' office. The co-tenants did not together form a corporation or partnership, and neither had any power to bind the other by any contract, agreement, or understanding—unless it be under circumstances and conditions already mentioned for strictly necessary repairs, where the defendant, being present and capable of acting for herself, refuses upon notice and demand therefor to unite in the work. There is in fact no showing that the proposed meeting was held at the time and place mentioned. If it was held, and a conclusion was reached by the plaintiffs that the rebuilding of the dam was a proper and necessary expense, the rule of law to which we have adverted required that such conclusion be communicated to the defendant, with a demand for her co-operation, before the expense was incurred, in order to hold her liable to contribute. There is no pretense of any such notice or demand. The one witness on the subject, speaking of the conversation to which we have referred, says: "That is all the talk I had with her about that. She is the only one of the Browns I spoke to about these repairs." It seems clearly just and equitable to hold that, before the owners of a small fractional interest in common property may impose such heavy burdens upon the owners of the majority interest, with comparatively little expense to themselves, they must at least show full and fair observation on their own part of all the conditions precedent to the exercise of such extraordinary power.

II. The reasons leading to the conclusion announced

in the foregoing paragraph apply with equal, if not greater, force to the case asserted against the defendant N. E. Brown. No notice was given him, or demand made upon him, to co-operate in building the dam. He was not at any meeting of the owners where the rebuilding was decided upon, and the most that is said of him is that he "was around the place while repairs were going on. He did not make any objections to me." But, as we have already suggested, one tenant in common can not of his own personal motion proceed to make repairs upon the common property, and enforce contribution from his cotenant simply because the latter knew that the money was being expended. *Crest v. Jack,* 3 Watts (Pa.) 238 (27 Am. Dec. 353). No ground was shown for a recovery against this defendant, and it was error to render judgment against him on the record made.

2. SAME.

III. Nor are we able to find any ground upon which the decree establishing a mechanic's lien upon the property can be upheld. We can now conceive of no circumstances under which a tenant in common may proceed alone to repair or improve the common property, and have the benefit of the statutory lien therefor. The repairs made were repairs to plaintiff's own property, and they operate to repair defendant's property only because of the undivided character of the title and ownership. It may well be that claims for repairs and improvements will, under some circumstances, be recognized by a court of equity in partitioning the common property and adjusting the conflicting interests of all the tenants, but counsel cite no authority or precedent, and we think none can be found, where one tenant can enforce a mechanic's lien upon the share of his co-tenant for expenses thus incurred. There is no contract, express or implied, upon which it can be based. Moreover, it is no more the duty of one tenant than it is of another to protect the common estate against liens and incumbrances by which

3. CO-TENANT:
repair of common property:
mechanics' lien.

the title may be lost. It is an elementary proposition that a tenant in common can not oust his co-tenants by acquiring a tax title to the property, and his payment or discharge of any lien or claim thereon operates for the benefit of all, though upon partition his claims for reimbursement will ordinarily be recognized. For equally cogent reasons he can not impose a lien upon his co-tenant's interest by his own act. To permit the owner of a small fractional interest to thus repair or improve the owners of the greater part out of their estate would be a clear departure from the fundamental principles of the law of co-tenancy. In the case at bar these parties were involved in a litigation which even then had, in one form or another, been in progress for twenty years or more. They were hostile in act and in sentiment, and neither could have been led into any supposition or belief that the other was conceding anything, or voluntarily consenting to any movement or act of his adversary, which could be the foundation of any additional liability. In short, there is an entire absence of all the requirements for the establishment of a statutory lien, and the decree enforcing the same can not be sustained.

IV. While the considerations already adverted to are sufficient to require a reversal of the judgments appealed from, it is proper that we also consider the plea of former adjudication set up by the defendants. In

4. SAME:
  partition:
  res judicata.

this connection it is well to again recall attention to the fact that, at the very moment when the dam was rebuilt, an action was then pending between these parties for the partition of the property upon which the money was expended. A decree had been entered fixing their several shares in the ownership, and providing, in effect, for a continued undivided ownership of the dam, with a scheme or plan for the actual partition of the water to be drawn therefrom for the use of the mills owned by the parties in severalty. It was with a view to the situation created or confirmed by this decree that the

trial court ordered the rebuilding of the dam at the common expense of all the owners, and doubtless it was in reliance upon the same decree that plaintiffs proceeded to the work of rebuilding. But the appeal from that decree resulted later in a finding by this court (see *Brown v. Cooper, supra*) that there could be no physical partition, and that the entire property should be ordered sold, and partition be made of the proceeds as demanded by the Browns. We are therefore to consider the rights of the parties and their relations to each other and to the subject matter of their controversy as they would have been had the trial court entered a proper decree, ordering a sale of the property instead of the erroneous decree which was entered. Had the court entered a decree, as it should have done, for a sale of the property and distribution of the proceeds, and the flood had destroyed the dam pending the sale so ordered, it is very clear, we think, that neither tenant could have rebuilt it at the common expense without the consent or agreement of his co-tenants. The destruction of the dam was a fact which would naturally affect the price at which it could be sold, but it was a calamity or misfortune common to all, and the loss would have been borne by each in his proper proportion. Indeed, with a decree in the form indicated by this court in the decision of that appeal, and with nothing to do except to sell the property according to the forms of law, and to distribute the proceeds thereof, it is not conceivable that the trial court, or the plaintiffs themselves, would undertake to halt the proceedings and suspend the sale until the dam should be rebuilt. Suppose, for instance, that the subject of partition had been a city lot having upon it a business block, and after decree for its sale the building was destroyed by fire, would it be competent for the court, or one of the parties, to reconstruct the building in anticipation of the sale, and expect contribution from his co-tenant for the expense so incurred? Certainly not. True, in this instance such a decree had not been entered but it

should have been. These defendants were demanding it, and on their appeal then pending this court sustained their position. They can now be placed in no worse position than they would have occupied had a proper decree been rendered as of the date of the decree which was afterward reversed.

A final adjudication is conclusive not only upon every matter in issue, but also upon all other matters or questions necessarily involved therein. The partition proceedings brought the common property within the jurisdiction of the court, and a decree ordering its sale puts it beyond the power of either party to thereafter complicate the situation by rebuilding a destroyed improvement thereon, and imposing the cost thereof upon his co-tenants. The reversal of the decree entered by the trial court, and the remand of the cause for a decree for the sale of the property, we think is so inconsistent with the asserted right of the plaintiffs to rebuild the dam at the cost of all the owners, after the defendants herein became entitled to a partition by sale, we are disposed to hold that such matters come within the doctrine of *res judicata,* and that the defense made upon that ground should be sustained.

V. The foregoing conclusions are decisive of the controversy, and we shall not extend this discussion, already of tedious length, to consider other issues raised by the answer and argued by counsel. We enter no order for a new trial; for, if we are correct in the conclusion reached in the last preceding paragraph of this opinion, there can be no recovery by plaintiff upon either of the several claims in suit. The several judgments and the decree of the district court from which the defendants have appealed are therefore reversed, at the plaintiff's costs.—*Reversed.*